**In re Clinton A. JACKSON, Respondent,**

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 94–BG–527.**

District of Columbia Court of Appeals.

Submitted Nov. 8, 1994.
Decided Nov. 29, 1994.

No brief was filed in this court on behalf of either party.

Leonard H. Becker, Bar Counsel, Washington, DC, filed a brief before the Board on Professional Responsibility on behalf of petitioner, the Office of Bar Counsel.

Leonard L. Long, Jr., Charleston, SC, filed a brief before the Board on Professional Responsibility on behalf of respondent.

Before WAGNER, Chief Judge, and FERREN and TERRY, Associate Judges.

PER CURIAM.

The Board on Professional Responsibility has recommended that respondent Jackson, a member of our bar, be suspended for six months for violating Disciplinary Rule (DR) 1–102(A)(4), which prohibits an attorney from engaging in "conduct involving dishonesty, fraud, deceit, or misrepresentation." A copy of the Board's report and recommendation, in slightly edited form, is appended to this opinion. Before this court neither Mr. Jack-

son nor Bar Counsel has challenged the Board's recommendation.

We conclude that the findings of the Board are supported by substantial evidence and that the proposed six-month suspension is an appropriate sanction. It is therefore

ORDERED that respondent, Clinton A. Jackson, is suspended from the practice of law in the District of Columbia for a period of six months, effective thirty days from the date of this opinion. We call respondent's attention to Rule XI, §§ 14(f) and 16(c), of the Rules Governing the Bar.

APPENDIX

DISTRICT OF COLUMBIA COURT OF APPEALS BOARD ON PROFESSIONAL RESPONSIBILITY

In the Matter of: Clinton Jackson, Respondent

Bar Docket No. 415–92

REPORT AND RECOMMENDATION OF THE BOARD ON PROFESSIONAL RESPONSIBILITY

This matter is before the Board on the Report and Recommendation of Hearing Committee Number Five. The case arises from Respondent's preparation of a series of federal tax returns for his clients Gerald and Vita Wilkins. After an audit of two returns, the Internal Revenue Service disallowed substantial amounts of deductions, increased the applicable tax owed by the Wilkinses, and assessed penalties and interest. The Wilkinses brought a successful civil action for malpractice against Respondent and were awarded a judgment of $63,447.97, together with attorneys' fees and costs.

Bar Counsel initiated this disciplinary proceeding against Respondent on March 1, 1993. Two days of hearings were held by the Hearing Committee, and at their conclusion, the Hearing Committee adopted a finding that Respondent had violated DR 1–102(A)(4) (dishonesty and misrepresentation). The Hearing Committee subsequently recommended that Respondent be suspended for one year. Respondent filed an exception to the factual findings and proposed sanction.

The Board heard oral argument in this matter on February 24, 1994. For the reasons set forth below, the Board concurs with the findings of fact and conclusions of law of the Hearing Committee, but disagrees with the recommended sanction. The Board recommends a sanction of a six-month suspension.

## I. FACTUAL BACKGROUND

Respondent is an attorney and certified public accountant (CPA). He became a CPA three or four years prior to his admission to practice before the D.C. Court of Appeals in 1984. He worked as an accountant with Arthur Andersen from 1977 until 1980–81. In 1984 he started his own business handling entertainment, real estate, tax, and a variety of financial matters.

Respondent met Gerald Wilkins in 1985 while he was working with Mr. Wilkins' brother, Dominique, who is also a professional basketball player. Respondent initially did some work for Gerald Wilkins at the time of his initial signing with the New York Knickerbockers ("Knicks"). Respondent helped to structure the compensation package given to Wilkins by the Knicks. Subsequently, in 1988, Wilkins requested that Respondent assist in the preparation of tax returns for years 1985, 1986, and 1987. Gerald Wilkins had not filed returns for these years and, in the process of obtaining an advance on a signing bonus, he was advised that he needed to get his taxes filed. Extensions for filing these returns were filed on Wilkins' behalf by Douglas Dyer, a banker who paid bills for Wilkins and other professional athletes by special arrangement.

Respondent sent Gerald Wilkins a "systemizer" for organizing his records. It was never completed. Instead, Respondent relied on information provided to him over the telephone by Respondent's wife, Vita Wilkins; Douglas Dyer; and various agents of Wilkins as well as employer representatives. Wilkins handed over the tax questions to his wife and Dyer since, as he testified, doing the tax systemizer "wasn't my cup of tea.... I was on my way to play basketball." Wilkins testified that he had no conversations or contact with Respondent concerning the re-

turns between September 1988, when he requested Respondent to prepare the taxes, and December 1988, when he signed the returns which were filed. Respondent testified that he had discussed the status of the returns with Wilkins in November 1988 and tried to impress upon Wilkins the need for further information.

Respondent also testified that he reviewed draft returns with Douglas Dyer, but that he did not retain a copy of the draft returns. Dyer had no recollection of seeing draft returns and was absolutely certain that he did not discuss the returns with Respondent. Wilkins testified that he "did thumb through" the tax returns, but that he "put his faith in Mr. Jackson" when the returns were sent to him for signing. The 1987 return indicated that Gerald Wilkins was due a tax refund of $42,000.

Once the delinquent returns were filed, Wilkins asked Respondent to prepare his tax returns for 1988. Respondent did so, relying again on Vita Wilkins and Douglas Dyer for information. The 1988 return was filed timely, and a refund to the Wilkinses was indicated in the amount of $31,700.

In February 1990, the Internal Revenue Service (IRS) gave notice of intent to audit Gerald Wilkins' 1987 tax return, and subsequently the 1988 return was called into question. Ultimately, IRS found substantial deficiencies (over $31,000 for each year) and assessed penalties and interest ($27,736.96 for 1987 and $14,961.00 for 1988).

The deficiencies found by the IRS included disallowance of: significant business deductions paid to an unincorporated business, Gerald B. Wilkins Enterprises; claims for personal exemptions for a dependent for failure to meet the support test; duplicate deductions of travel expenses; gifts to Gerald Wilkins' mother that were claimed as "agent's fees"; and deductions or losses claimed for expense and depreciation on automobiles used entirely for personal purposes. The Wilkinses filed a civil action against Respondent for malpractice in the United States District Court for the District of Columbia. On August 20, 1992, the court awarded the Wilkinses $63,447.97 for the penalties, interest, and other costs associated

with the audit of the 1987 and 1988 returns, together with attorneys' fees and costs. This judgment was satisfied on July 20, 1993, after the hearing in this matter was completed.

## II. DISCIPLINARY VIOLATION

Hearing Committee Number Five found that Respondent's conduct in his representation of the Wilkinses by the preparation of their 1987 and 1988 tax returns violated DR 1–102(A)(4), which provides that "a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." The Hearing Committee found that the evidence "is uncontroverted that Respondent claimed substantial amounts of business deductions for the Wilkinses with full knowledge that there was no documentation to justify these deductions." This finding is consistent with that of Judge Jackson, in the civil suit brought by the Wilkinses, who described the returns prepared by Respondent as "fraudulent" and intended "to deceive the Wilkinses, and if their luck and his held, the IRS."

Respondent filed a general exception to the findings of fact and conclusions of law of the Hearing Committee and continued to assert at the oral argument that another interpretation of the facts, as stated in Respondent's Proposed Findings, was possible. Essentially, that version is that the Wilkinses did not supply detailed information and that Respondent justifiably relied on the information and characterization of the expenses that he was supplied.

The Board adopts the findings of fact and conclusions of law of the Hearing Committee. Respondent has failed to demonstrate that these findings are based on insufficient evidence. Moreover, the full record of the disciplinary hearing, including Bar Counsel's exhibits, and the opinion of Judge Jackson in *Wilkins v. Jackson,* Civil Action No. 91–2911 (D.D.C. August 20, 1992), all fully support the factual findings of the Hearing Committee.

Moreover, as the Hearing Committee noted, even accepting Respondent's position that his clients were not fully cooperative with him in supplying tax information and documentation, Respondent remains in violation of DR 1–102(A)(4). Respondent was fully aware that even if it existed, no one had been able to supply him with documentation of the various deductions claimed in the returns. Whether the justifications were derived only from Respondent's imagination (as Judge Jackson concluded) or fictions created by others, Respondent knew that he did not have any documentation to support the characterization of the significant deductions claimed in the returns.

The elements of DR 1–102(A)(4) have been analyzed in *In re Shorter,* 570 A.2d 760, 767–68 (D.C.1990), a case also involving tax issues. Respondent's conduct in preparing the tax returns without adequate documentation, indeed without any documentation in some instances, certainly constitutes "dishonesty." It is not necessary to determine whether it also falls within one of the other categories covered by this disciplinary rule.

## III. SANCTIONS

The Hearing Committee has recommended a sanction of a one-year suspension. Respondent argues that a public censure or a very short suspension of thirty days, at most, is appropriate. Bar Counsel's position after the hearing and at the oral argument was that a 60–day suspension is appropriate. At the oral argument, Bar Counsel termed the Committee's recommendation of a one-year suspension for this solo practitioner as "draconian."

A lawyer is held to a high standard of honesty, no matter what role the lawyer is filling: acting as lawyer, testifying as a witness in a proceeding, handling fiduciary responsibilities, or conducting the private affairs of everyday life. At the same time, the context of an attorney's behavior is important in determining the type and level of sanction to be recommended. The Board believes that under the circumstances of this case, a suspension of six months is appropriate. In so recommending, the Board recognizes that there is no neat formula for calculating precisely the exact sanction for any particular case. The Board knows that each

level of the disciplinary system struggles with this issue and attempts to resolve it in as fair and equitable a manner as possible.

In this case, the Board reached its recommendation by considering the factors traditionally used by the Court in imposing sanctions:

### (a) *Prior Discipline*

Respondent has no prior disciplinary history. This violation is his first after nearly a decade of practice.

### (b) *Seriousness of the Conduct*

The Board regards the misconduct involved in this case as serious. There was some suggestion at the oral argument in this case that less than complete honesty in the context of filing tax returns, whether one's own or another's, is tolerated, if not viewed as acceptable by society. The Board does not accept this view.

Respondent was an experienced tax practitioner and should well have appreciated the importance of preparing accurate and complete tax returns. Indeed, as a certified public accountant with substantial experience, Respondent should be very familiar with the requirements and standards for documentation of deductions and expenses. His expertise in this area highlights the significance of the absence of such documentation in the Wilkinses' returns.

Counsel for Respondent argued at the oral argument that there was no "pattern" of violations or misconduct involved in this situation. While there are no complaints from other clients, the misconduct here concerns two separate tax returns prepared at two distinct times and the Board therefore considers that this is not a single, isolated instance.

### (c) *Prejudice to the Client*

Where a client is constrained to bring a malpractice action against counsel, it is axiomatic that there is prejudice to the client, even where, as here, the client makes full recovery of any economic loss. Even though the Wilkinses may have been made whole by Respondent's payment of the judgment and attorneys' fees, they were forced to go through the ordeal of an IRS audit and the malpractice litigation against Respondent. At the same time, the Board notes that while the Wilkinses did rely on Respondent's expertise, they did not take all the steps that Respondent requested, such as completion of the tax "systemizer." Gerald Wilkins acknowledged that "Gerald Wilkins Enterprises" was a thought of his "that never materialized" although it was to have been "something to try to hide more money." This attitude does not explain or dispel the wrongfulness of Respondent's conduct, although it does somewhat mitigate the prejudice to the clients.

### (d) *Violation of Other Code Provisions*

Respondent was not charged with any other violations of the disciplinary code. At the same time, this case does involve two separate tax returns and a finding of the same misconduct in each instance.

### (e) *Conduct Involving Dishonesty/Misrepresentation*

The Board notes that the Court has imposed sanctions in cases involving dishonesty or misrepresentation ranging from a public censure to a suspension for a year. Public censure was ordered for false statements on a resume. *In re Hadzi–Antich*, 497 A.2d 1062 (D.C.1985). A thirty-day suspension was ordered for making three separate misrepresentations to a court, *In re Rosen*, 481 A.2d 451 (D.C.1984), and for falsification of travel expenses by a law firm associate, *In re Schneider*, 553 A.2d 206 (D.C.1989). A sixty-day suspension was ordered for misrepresentation to a court to avoid disqualification for conflict of interest. *In re Waller*, 573 A.2d 780 (D.C.1990). A ninety-day suspension was ordered for lying about salary on an application for a bank loan, *In re Kennedy*, 542 A.2d 1225 (D.C.1988); for a false interrogatory answer and lying at a deposition by an attorney acting pro se, *In re Thomas*, No. M–94–81 (D.C. March 1, 1982) (unpublished); and for helping a divorce client hide assets via a false interrogatory answer, *In re Sandground*, 542 A.2d 1242 (D.C.1988). A six-

month suspension was ordered for forging a client's signature on a complaint and then having it notarized, *In re Reback*, 513 A.2d 226 (D.C.1986), and for making false statements to a bank on behalf of a client and lying under oath regarding the conduct, *In re Greenspan*, 578 A.2d 1156 (D.C.1990) (fitness requirement also imposed due to "significant record of prior discipline"). A one-year suspension was imposed for false, sworn testimony to the government regarding an attorney's role in a stock purchase, *In re Hutchinson*, 534 A.2d 919 (D.C.1987); for assisting a client to make false statements on an immigration application, *In re Thompson*, 538 A.2d 247 (D.C.1985); and for making illegal campaign contributions, *In re Wild*, 361 A.2d 182 (D.C.1976) (respondent also convicted of misdemeanor violation based on same conduct).

In this case, Respondent's conduct would appear roughly equivalent to other violations resulting in a six-month suspension. In light of the facts that Respondent was not charged with a criminal violation and does not have a history of disciplinary violations—as did the attorney in *In re Thompson*, who knowingly assisted in presenting a false statement to the Immigration and Naturalization Service—the Board believes that this case most closely parallels the *Reback* and *Greenspan* cases. The case can be distinguished from *Hutchinson* on the basis that Hutchinson was also convicted of a misdemeanor violation and the circumstances in that matter also involved disciplinary violations of three different disciplinary rules.

(f) *Respondent's Acknowledgment of Wrongful Conduct*

Respondent has not acknowledged any wrongful conduct. Certainly respondents in disciplinary matters are entitled to a presumption of innocence and should be allowed to assert all possible defenses. Acknowledgment of wrongdoing has been treated as a mitigating factor. In that regard, the Board does note that Respondent has satisfied the judgment and paid the Wilkinses the amount ordered by the court in the malpractice action. The Board also notes the absence of any personal gain by the Respondent from this misconduct. Although this fact may make these violations even less explicable, the Board does not accept the suggestion that Respondent engaged in this conduct in order to assure himself of further business from Gerald Wilkins. There is simply no evidence in the record to support this conjecture.

Weighing all of the above factors, the Board believes that a six-month suspension is appropriate under the circumstances of this case and that such a sanction is consistent with precedents in this area. The Board has noted the admonition of the Court in *In re Jones*, 599 A.2d 1145, 1149 (D.C.1990), that the longer periods of suspension involve a "serious pattern of misconduct" coupled with a prior disciplinary history and more than one serious case. Bearing this in mind, and considering the absence of prior discipline as a mitigating factor, the Board believes that a six-month suspension for both violations would be appropriate.

## CONCLUSION

The Board recommends that Respondent be suspended from the practice of law for a period of six months.

BOARD ON PROFESSIONAL RESPONSIBILITY

BY: /s/ Karen Kay Christensen
Karen Kay Christensen
Vice Chair

Dated: May 2, 1994

All members of the Board concur in this Report and Recommendation except Mr. Hart and Ms. Zumas, who did not participate. Mr. Howard is recused.