**In re David ZEIGER, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 96–BG–1016.**

District of Columbia Court of Appeals.

Argued March 26, 1997.
Decided April 24, 1997.

Louis Fireison, with whom Matthew H. Goodman, was on the brief, Bethesda, MD, for Respondent.

Michael S. Frisch, Senior Assistant Bar Counsel, with whom Leonard H. Becker, Bar Counsel, was on the brief, for the Office of Bar Counsel.

Before STEADMAN and RUIZ, Associate Judges, and PRYOR, Senior Judge.

PER CURIAM.

This disciplinary matter comes before us on the report and recommendation of the Board on Professional Responsibility (the Board) that respondent be suspended from the practice of law for sixty days. Bar Counsel supports the Board's report and recommendation. Respondent concedes that he altered his client's medical records and submitted them to opposing party's insurer thereby violating three provisions of the Rules of Professional Conduct: Rule 3.4(a) (altering, destroying, or concealing evidence); Rule 4.1(a) (making a false statement of material fact to a third person); and Rule 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). *See* D.C. Bar R. X., Appendix A. Respondent excepts the Board's recommendation for a suspension as inconsistent, unwarranted, and contrary to the evidence. Respondent also contends the Board erred by failing to remand the case for testimony on respondent's alleged psychological disability and by failing to consider his disability and the Board's own administrative delay as mitigating factors.

We are required to "accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record, and shall adopt the recommended

disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." D.C. Bar R. XI, § 7(g)(1). *See In re Morris*, 495 A.2d 1162, 1163 (D.C.1985), *cert. denied*, 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). Within this standard, we accept the Board's factual findings and adopt its recommended disposition, which reflects consideration of a number of mitigating factors.[1] Further, we do not think the Board abused its discretion in denying Respondent's motion to remand the case for presentation of a *Kersey*-type[2] mitigation, particularly given the absence of any justification for the belated request[3] and the weakness of the proffer as to rehabilitation.[4] We accept the Board's factual findings and adopt its recommended disposition. Respondent's contentions regarding mitigation are meritless. A copy of the Board's Report and Recommendation is attached.

David Zeiger is hereby suspended from the practice of law in the District of Columbia for a period of sixty days, effective thirty days after entry of this opinion. We call respondent's attention to the requirements of D.C. Bar R. XI § 14, relating to suspended attorneys and to § 16(c) concerning the timing of eligibility for reinstatement as related to compliance with § 14, including the filing of the required affidavit.

*So ordered.*

1. Respondent's temporary and subsequently corrected suspension from appointment under the Criminal Justice Act, suggested for the first time on appeal but not evidenced in the record before us, does not appear to be a feature sufficiently compelling to overturn the Board's analysis. Nor do we fault the Board's denial of relief based on certain delays in the disciplinary process, in the absence of any showing to the Board of significant prejudice. *See In re Morrell*, 684 A.2d 361 (D.C.1996).

2. *In re Kersey*, 520 A.2d 321 (D.C.1987).

3. "Clients must be held accountable for the acts and omissions of their attorneys." *Molovinsky v. Monterey Cooperative, Inc.*, 689 A.2d 531 n. 7 (D.C.1996) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 396, 113 S.Ct. 1489, 1499, 123 L.Ed.2d 74

APPENDIX

DISTRICT OF COLUMBIA COURT
OF APPEALS
BOARD ON PROFESSIONAL
RESPONSIBILITY

In the Matter of David L.
Zeiger, Respondent.

Bar Docket No. 430–93

*ORDER AND REPORT AND RECOMMENDATION OF THE BOARD ON PROFESSIONAL RESPONSIBILITY*

In a petition filed June 15, 1994, Bar Counsel charged Respondent with violating three Rules of Professional Conduct: Rule 3.4(a), obstruction of another party's access to evidence and alteration, destruction or concealment of evidence; Rule 4.1(a), making false statements of a material fact to a third person while representing a client; and Rule 8.4(c), conduct involving dishonesty, fraud, deceit or misrepresentation. Hearings were held before Hearing Committee Number Six on October 6 and December 12, 1994.[5] In its August 8, 1995 report, the Hearing Committee found clear and convincing evidence that Respondent violated all three rules and recommended that he be suspended from practice for sixty (60) days.

Respondent excepted to the Hearing Committee's recommended sanction, arguing that the appropriate sanction is a public censure. In addition, on October 17, 1995, he filed a motion to dismiss the charges with prejudice

(1993)). Furthermore, no evidence was presented that the nature of Respondent's asserted disability blocked awareness of his condition, nor did Respondent suggest an immediate suspension pending further proceedings. *Cf. In re Thompson*, 579 A.2d 218 (D.C.1990). At the time of the disciplinary proceedings in *Thompson*, the *Kersey* mitigation process was relatively new and undeveloped in our disciplinary jurisprudence, far different from the present when any attorney charged with a disciplinary violation should know of the possibility of such mitigation, if applicable.

4. We take no position on whether the assertions as to Respondent's mental condition here were sufficient to fall within *Kersey*.

5. The transcript of the October 6, 1994, hearing is cited as "Tr. I," and that of December 12, 1994, as "Tr. II."

because of "unwarranted" delay in the disciplinary proceedings. On November 9, 1995, the Board denied the motion without prejudice as premature.

On November 16, 1995, Respondent moved to remand the proceeding to the Hearing Committee for testimony on a psychological disability from which he said he was suffering at the time of his misconduct. No such evidence had been presented at the original hearing.

On March 7, 1996, the Board heard oral argument on Respondent's motions for remand and dismissal and his exceptions to the Hearing Committee's findings. Bar Counsel supported the Hearing Committee's recommendations and opposed the motions to dismiss and remand.

The Board:

a) finds that Respondent failed to make a "good cause" showing that the case should be remanded for evidence on a mitigating disability and denies the motion for remand;

b) concludes that the length of the proceedings was neither unusual nor prejudicial to Respondent and denies the motion to dismiss on those grounds and further finds that delay is not a mitigating factor;

c) upholds the Hearing Committee's findings on all three violations; and

d) recommends that Respondent be suspended from the practice of law for sixty (60) days.

### Facts of the Case

Respondent's client, Jose Vasquez, was struck and injured by an automobile in the District of Columbia on May 13, 1991. Respondent had met Mr. Vasquez, a native of El Salvador, earlier that year when he was appointed to represent him on a misdemeanor charge. (Nearly all of Respondent's law practice consists of appointments under the Criminal Justice Act). Mr. Vasquez retained Respondent to represent him in his claim against Aetna Insurance Company for personal injuries arising out of the auto accident. Aetna represented the driver of the car, Tekle Sefanos, who admitted going through a red light and hitting Mr. Vasquez when he was in the crosswalk.

An Aetna claims agent, Patricia K. Thomas, wrote Respondent in July 1991 asking him to send her Mr. Vasquez's medical records from the George Washington University Hospital where he had been hospitalized for a week with a broken leg and other injuries, but Respondent submitted no records at that time. It was not until February 17, 1992, that a meeting took place involving Ms. Thomas, Mr. Vasquez, and Respondent. At that meeting, among other questions, Ms. Thomas asked Mr. Vasquez whether he had been drinking at the time of the accident, and Mr. Vasquez said he had not.

Respondent did obtain the hospital records and found in them references to the fact that Mr. Vasquez had been tested for alcohol in his blood and was intoxicated when he was admitted after the accident. By his own admission, Respondent altered the hospital records by obliterating all references to alcohol use at the time of the accident, to his alcoholism, and to treatment he received related to his alcoholism while at the hospital. He accomplished this by using white-out or folding the page so that the references would not appear when he copied the records. Respondent failed to advise Aetna of the alterations when he submitted the records and hospital bills to Ms. Thomas on June 18, 1992, with a letter asking for a settlement of $295,000.

Ms. Thomas noted the large darkened areas on certain pages. She also found no mention of an alcohol blood test which she assumed had been given to Mr. Vasquez. Tr. I at 19–21, 24. In September 1992, she called Respondent to ask him about these "incomplete" pages. According to her testimony, she was assured that she would be given a clean copy of all medical records. Tr. I at 26.

Around the same time, in August or September 1992, Respondent arranged for another attorney, Donald A. Clower, Esquire, to assume joint responsibility for the Vasquez case. Respondent testified that he informed Mr. Clower about his alteration of the records when they first spoke about the case. Tr. II at 91. Mr. Clower, however,

maintained that Respondent did not tell him about the alterations. Tr. II at 10. He said that he became aware of a problem with the completeness of the hospital records submitted to Aetna during a three-way telephone conversation with Respondent and Ms. Thomas that took place between September 22 and September 29, 1992, but believed the records were simply incomplete rather than altered. Tr. II at 8–14.[6] The dispute appeared to turn on Mr. Clower's understanding of Respondent's statement that he "took out" things from the record to mean that some of the records had not been sent, rather than that Respondent had altered the records. Tr. II at 91, 13. The Hearing Committee credited Mr. Clower's testimony and noted that "[e]ven if Mr. Clower did understand that the records were altered, it does not change the Hearing Committee's recommendations." HC Report, at 9–10 n. 6.

On December 21, 1992, Mr. Clower filed suit in the District of Columbia Superior Court on behalf of Mr. Vasquez against Mr. Stefanos. After a mediation session in the fall of 1993, the attorney for Aetna, Paul R. Pearson, Esquire, informed Mr. Clower that Aetna had received altered records from Respondent. On October 15, 1993, Mr. Clower reported Respondent's actions to Bar Counsel.

The Vasquez case was settled for $60,000 on October 30, 1993, two and a half years after the accident. Tr. II at 37.

### Hearing Committee Findings

Respondent did not contest the fact that he altered the medical records. He maintains that he did so solely in order to benefit his client, since he believed that the information he deleted was both "immaterial and extremely prejudicial to his client." Brief of Respondent, November 22, 1995, at 4.

I thought that the fact that he was drunk at the time of the accident would, it would

be irrelevant now, but it would prejudice any jury against Mr. Vasquez ... I wasn't thinking settlement. I was thinking trial. Tr. II at 69–70. Respondent also testified that he wanted a "fast settlement" because, in view of Mr. Vasquez's chronic alcoholism and bad health, he feared his client would "disappear from the jurisdiction" back to El Salvador. Tr. II at 81.

The Hearing Committee concluded that "Respondent's primary motive [for altering the records] was to assist his client, but it may have been partially colored by Respondent's need to recoup monies for himself." HC Report at 13. The "monies" referred to funds Respondent had spent buying food and clothes for Mr. Vasquez. The Committee found further that "the material deleted by Respondent was significant and relevant to the proceedings in this case," since he altered documents he knew would be the subject of discovery or subpoena in the litigation that was likely if settlement was not reached. *Id.* at 11–12.

A violation of Rule 3.4(a) was not contested by Respondent, who admitted the alterations when first contacted by Bar Counsel.[7] The Hearing Committee also found clear and convincing evidence of a violation of Rule 8.4(c), making it misconduct for an attorney to "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Sending the altered materials to the insurance agent in the apparent hope that she would assume them to be complete and rely on them in dealing with the claim, the Committee said, was "dishonest" within the meaning of the rule.

*See In re Shorter*, 570 A.2d 760, 767 (D.C. 1990) (deliberately misleading answers to IRS agent, while literally true, violate predecessor rule). It also constituted deceit and misrepresentation, in that it sought to conceal the client's intoxication at the time of the accident and his treatment for it. *See In re Reback*, 487 A.2d 235 (D.C.1985) *rev'd on*

---

6. The memories of witnesses as to when or even whether this conversation took place were vague, but the Committee concluded that it had.

7. Rule 3.4(a) provides that a lawyer shall not "[o]bstruct another party's access to evidence or

alter, destroy, or conceal evidence, or counsel or assist another person to do so, if the lawyer reasonably should know that the evidence is or may be the subject of discovery or subpoena in any pending or imminent proceeding."

*other grounds,* 513 A.2d 226 (D.C.1986) (en banc).

Finally, the Hearing Committee found a violation of Rule 4.1(a), knowingly making a false statement of material fact to a third person during the course of representing a client.

The Board agrees with the findings of the violations.

### Sanction

Respondent's exception to the Hearing Committee's report focuses on sanction. The Hearing Committee recommended a suspension of sixty days based on three violations and a single act of misconduct. Originally, Bar Counsel recommended a ninety-day suspension but supports the Hearing Committee's recommendation. Respondent argues that a suspension is too severe and that a public censure would be appropriate.

Bar Counsel argues that Respondent's misconduct is more serious than that in *In re Hadzi–Antich,* 497 A.2d 1062 (D.C.1985), in which the attorney received a public censure for misstating his class rank on a resume to obtain employment. Here, the misconduct involved the alteration of material documents, which are a lawyer's "stock and trade," in order to mislead a third party. *See In re Schneider,* 553 A.2d 206, 209 (D.C. 1989). As an example of how seriously the Court treats the alteration of evidence, Bar Counsel cites *In re Goffe,* 641 A.2d 458 (D.C. 1994), in which the attorney was disbarred for using forged and altered documents in two matters. We agree that Respondent's redaction of medical records in his negotiations with the insurance company is more serious than the lie on the employment resume in *Hadzi–Antich* and falls well within the range of cases in which the sanction has been a suspension.

In discussing the proper length for a suspension, Bar Counsel cites: *In re Schneider, supra,* in which an attorney received a thirty-day suspension when he altered receipts to justify travel expenses which he had legitimately incurred but feared would upset his clients; *In re Bikoff,* No. 95–BG–530 (D.C.

July 12, 1995), in which an attorney was suspended for sixty days for misclassifying expenses to avoid controversy with clients over whether the expenses were reimbursable; and *In re Jackson,* 650 A.2d 675 (D.C. 1994), in which the attorney was suspended for six months for dishonesty in preparing a client's tax returns.

Respondent points out that his redaction of the records did not harm his client; his motive was only to help the client, not personal gain or advancement; the violation consisted of a single incident; and the misconduct did not occur during the course of legal proceedings.

Respondent also notes that he was inexperienced in personal injury cases and, once he realized his incompetence, especially when he became worried about his change of the hospital records, he called in an attorney experienced in the field. In this regard, he cites *In re Spaulding,* 635 A.2d 343 (D.C.1993), in which an attorney undertook a matter he was not competent to handle, failed time after time to file the proper motions, caused the client's case to be dismissed with prejudice, and left the client with the false impression that he had filed an appeal on her behalf to the Supreme Court. The three violations found in *Spaulding* were neglect, dishonesty, and incompetence. In addition, the attorney had received two prior admonitions for neglect. Notwithstanding this record, the hearing committee, citing his motivation to help his client, even though it miscarried to harm the client, recommended only a public censure. The Board disagreed because of the seriousness of the neglect and recommended a thirty-day suspension to be stayed for one year while the attorney was on probation, a sanction the Court upheld.

There are some parallel mitigating factors here with *Spaulding.* Respondent is sympathetic in that he takes mostly CJA cases, represents many poor Spanish-speaking clients, is active in his community, and is a sole practitioner making less than $38,000 a year. The Committee notes that "[c]haracter witnesses cited numerous incidents of his advocacy and devotion to his clients." HC Report at 23. He has never had another disciplinary problem in the course of his elev-

en-year career. He expresses contrition and says he better understands his ethical duties and obligations. HC Report at 21. And his motivation, while the Committee found it "colored" by a desire to recoup his expenses, was primarily to help his client.

The Hearing Committee took these factors into account but obviously did not find Respondent as sympathetic a figure as the hearing committee in *Spaulding* found that attorney.

Here, the Committee called attention to Respondent's repeated attempts to shift the focus of the hearing to the mistakes of others and his "lashing out" at witnesses that led him to accuse one witness of lying. HC Report at 22. The Committee, further, did not credit Respondent's attempts to minimize his conduct by arguing that his alterations did not affect the outcome of the case and that he did not believe, when he altered the records, that Aetna would rely on them; he was thinking only of a potential jury. These arguments should not mitigate the sanction, the Committee said, because "[t]he potential for significant harm existed." *Id.*

Rather, the Hearing Committee concluded that the circumstances in this case "fall between" *Schneider*, a thirty-day suspension case, and *In re Sandground*, 542 A.2d 1242 (D.C.1988). In *Sandground*, the attorney was suspended for ninety days for assisting his client to conceal assets from his spouse in divorce litigation. Like *Schneider*, Respondent did not profit from his deception, but he was more experienced than the attorney in that case, who was "barely an initiate into the bar." *Schneider*, 553 A.2d at 212. Like Sandground, the Hearing Committee said, "Respondent was an experienced lawyer, not a novice. His actions were motivated by a desire to assist a client, to the detriment of a third party, but the case was not in litigation. Finally, this case involved only a single instance of dishonest conduct." HC Report at 24–25. Based on this analysis, the Hearing Committee chose a mid-point of sixty days for its recommended suspension.

Respondent argues, on the other hand, that sixty-day suspension cases involve more serious misconduct than his. The attorney in *In re Waller*, 573 A.2d 780 (D.C.1990), for example, made a misrepresentation to the court and engaged in other, uncharged misconduct. There were two prior ethical violations, little remorse, and no mitigating circumstances.

The Board finds that a 60–day suspension is appropriate. Altering records in a legal matter, even in trivial ways, is not a trivial act. Respondent's efforts to mislead the other side in this personal injury matter certainly equals *Bikoff* in the extent of his deception and had, if anything, an even greater potential for harm. We see no reason for a lesser sanction than the sixty-day suspension recommended by the Hearing Committee.

### Motion to Dismiss Because of Undue Delay

The Court has held that because the primary purpose of the disciplinary system is protection of the public, undue delay in prosecuting a disciplinary case is "not in itself a proper ground for dismissal of charges of attorney misconduct." *In re Williams*, 513 A.2d 793, 796 (D.C.1986). Rather, the proper approach is to "treat the lapse of time as a possible mitigating factor." *Id.* at 798.[8] The Court has limited such mitigation to "unique and compelling circumstances." *In re Fowler*, 642 A.2d 1327, 1331 (D.C.1994).

This case was reported to Bar Counsel in October 1993 and a petition was filed on June 15, 1994. Respondent's answer was filed on July 22, 1994, and the first day of hearings was October 6, 1994. Because Bar Counsel discovered files that Respondent and his attorney had not reviewed, the hearing was temporarily adjourned and concluded two months later on December 12, 1994. Respondent says that the Hearing Committee report was due two months after that, by February 12, 1995 (Board Rule 12.2); however, Respondent's own post-hearing brief was not filed until February 17, 1995. The time it took the Hearing Committee to produce its

---

8. Under *Williams*, the Court leaves open the door to a dismissal where actual prejudice is shown. 513 A.2d at 797.

report after receiving post-hearing briefs—six months—is not unusual in this volunteer disciplinary system. Respondent was not under interim suspension and was free to practice law throughout the proceedings. Because current disclosure rules were not yet in effect, the case was confidential until issuance of the Hearing Committee's report.[9]

Respondent argues prejudice on the grounds that witnesses' memories were "diminished" because of delays, causing factual disputes that were decided against him. Reply Brief of Respondent, December 13, 1995, at 7. Respondent refers specifically to the dispute between him and Mr. Clower as to when Mr. Clower learned about the altered records. It is not clear that the delay caused this factual dispute but, in any event, we do not believe this to be material to the issue before us.

The one-year lapse between the time the case was reported to Bar Counsel and the first day of the hearing is not egregious. A seven-month investigation time is not unique or even unusual for most types of disciplinary cases. Bar Counsel verified his petition on May 9, 1994 and filed it with the Board on June 15, 1994, after approval by a contact member. Respondent filed his answer on July 22, 1994, and the hearing was scheduled for October 6, 1994, which is not out of line considering the fact that schedulers were dealing with summer vacations. Even at the best of times, it is difficult to find a hearing date agreeable to all parties.

We do not find that delays harmed Respondent or were so "unique or compelling" that they should be considered in mitigation. The Board denies the motion to dismiss.

### Motion to Remand

Respondent asked for a remand to present evidence concerning a "psychological disability that he suffered from at the time of his misconduct." Respondent's Motion to Re-

mand, November 16, 1995, at 1. According to his brief, Respondent has been examined by a psychologist "who has linked the various traumatic events suffered by respondent to his misconduct on the date in question." *Id.* at 2. Those events were a bitter divorce between Respondent's parents, a lawsuit filed against his sister, and the recent deaths of two friends.

The two-page affidavit submitted by a licensed clinical psychologist, Robert R. Dies, ("Dies affidavit") asserts that Respondent

> was suffering from acute personal distress with a resultant adjustment disorder during the period defined as the 'white out' incident. I conclude that [Respondent] was suffering from depression, that he was unusually vulnerable to the stressful events which predominated his life during this period and that his acute sensitivity led him to identify too closely with this client's disenfranchised position in life ... I am also of the opinion that but for [Respondent's] adjustment disorder, the conduct which forms the basis of this disciplinary proceeding would likely have not occurred. Affidavit at 2.[10]

The psychologist does not recommend treatment, "[s]ince the traumatic events which severely effected his emotional well being have subsided."

Respondent's claim of mitigation is untimely under Board Rules 11.10 and 11.11. To win a remand, Respondent's burden is to show "good cause" why he failed to raise the issue of his disability in a timely manner, at the beginning of the second phase of the bifurcated evidentiary hearing. BPR Rule 11.10. We conclude that Respondent has not made the necessary showing.

First, Respondent was represented by competent counsel at the hearing, an attorney familiar with the disciplinary system. Respondent does not explain why neither he nor his counsel raised the issue of his disability at the hearing. Second, we conclude that Respondent's proffer is inadequate to prove

---

9. The amendments to Rule XI that went into effect January 1, 1995, made disciplinary cases public as soon as Bar Counsel files a petition, rather than delaying disclosure until after a Hearing Committee finds a violation.

10. Bar Counsel opposes Respondent's request to receive the affidavit. The Board has considered the affidavit for the limited purpose of deciding the motion for remand.

mitigation under *In re Kersey,* 520 A.2d 321 (D.C.1987). *Kersey* and Board Rule 11.11 require a respondent to demonstrate by clear and convincing evidence that he had a disability or addiction, that he show by a preponderance of the evidence the causal link between the misconduct and the disability or addiction, and that he show by clear and convincing evidence significant rehabilitation or recovery. *See In re Temple,* 596 A.2d 585 (D.C.1991); *In re Kersey,* 520 A.2d at 326–27. The depression from which Respondent was said to suffer, characterized as an "adjustment disorder," has not been recognized by the Court as available to attorneys for *Kersey*-type mitigation. *Cf. In re Peek,* 565 A.2d 627 (D.C.1989) (chronic depression may be used as mitigating factor).

In addition, even assuming that Respondent's depression caused him to materially alter the medical records, Respondent has not proffered substantial evidence of his rehabilitation. Rather, the Dies affidavit states that "respondent is in little need of psychological counseling or treatment" and that his "severe emotional stress" has "since abated although respondent has not gone entirely unscathed from the incident." We find that this evidence of rehabilitation is not substantial.

Based on Respondent's failure to present a sufficient proffer of evidence that he would show on remand, coupled with his lack of a reasonable explanation for his delay in raising *Kersey* mitigation, we conclude that Respondent has failed to show good cause to support a remand.

### Conclusion

Accordingly, it is hereby ordered that Respondent's motion to dismiss disciplinary proceedings and his motion to remand the proceeding to a hearing committee for additional testimony on mitigating factors are hereby denied. For the reasons set forth above, the Board recommends to the Court of Appeals that Respondent be suspended from the practice of law for a period of sixty days.

BOARD ON PROFESSIONAL RESPONSIBILITY

By: /s/
    Hamilton P. Fox
    Chair

Dated: July 29, 1996.

This Order and Report and Recommendation was prepared by Ms. Zumas. All members of the Board concur in the Order and Report and Recommendation.