**In re Salvatore SCANIO, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals (Bar Registration No. 435343).**

**No. 05–BG–789.**

District of Columbia Court of Appeals.

Argued Jan. 16, 2007.

Decided March 29, 2007.

---

Barry E. Cohen for respondent.

Elizabeth J. Branda, Executive Attorney, for the Board on Professional Responsibility.

Julia L. Porter, Senior Assistant Bar Counsel, with whom Wallace E. Shipp, Jr., Bar Counsel, was on the brief, for the Office of Bar Counsel.

Before REID and FISHER, Associate Judges, and KING, Senior Judge.

FISHER, Associate Judge.

The principal question presented by this attorney disciplinary case is whether respondent acted dishonestly while representing himself in settlement negotiations with an insurance company. We agree with the Board on Professional Responsibility and Bar Counsel that respondent's conduct was "dishonest," but we do not adopt the sanction of public censure recommended by the Board. We conclude, rather, that a suspension of thirty days is warranted.

## I. The Factual Background

 Respondent's vehicle was rear-ended by another automobile on September 21, 2000. He sought treatment at a hospital and missed the next day of work. Soon after the accident, Melanie King, a claims adjuster for GEICO, the offending driver's insurance company, called respondent. Respondent told Ms. King that he was a lawyer and a partner at the firm of Spriggs & Hollingsworth. Over the next several months respondent and Ms. King exchanged information about his economic loss, his medical bills, and property damage to his vehicle.

According to Ms. King's notes, respondent informed her during a telephone conversation early in their dealings that "[h]e doesn't get paid hourly, he gets paid off his litigation." On January 16, 2001, respondent sent Ms. King a letter and chart describing his "economic loss." He explained that he had calculated "lost income," which he also described as "forgone income," "by multiplying my hourly billable rate" of $295 by "the time lost directly attributable to the injury." As of December 29, 2000, respondent indicated, he had suffered a total "economic loss" of $16,697.00. In a follow-up letter dated February 16, 2001, respondent notified Ms. King that his "hourly billable rate" had increased to $325 per hour on January 1, 2001. He attached an updated chart, which showed his total "economic loss" through February 8, 2001, as $23,034.50. At that point respondent calculated that he had missed approximately seventy-six

hours of work recovering from the collision and attending appointments with an orthopedic specialist and a physical therapist.

After requesting and receiving respondent's tax records, Ms. King called the law firm where he worked as a non-equity partner. The Human Resources Manager told Ms. King that respondent was a salaried employee who was paid roughly $122 per hour. Ms. King also learned that respondent had not been docked for sick leave or any other missed time. Indeed, this telephone conversation between the Human Resources Manager and Ms. King marked the first time the firm knew of respondent's car accident.

After learning that Ms. King had spoken with his firm, respondent tried to "clarify" the basis for his claim of lost income. He wrote to Ms. King on March 26, 2001 (and faxed the letter to her on March 27), explaining that billable hours were the "goods [and] services" he had to "sell" and that, "[a]s a result of the injury that reduced my billable hours, the income of my Firm of which I am a partner was reduced and my compensation was adversely impacted." Respondent claimed that the loss in billable hours caused his bonus to decrease from $30,000 in 1999 to $25,000 in 2000.

Upon its request, Ms. King sent the firm a copy of her correspondence with respondent. In a memorandum dated April 2, 2001, the equity partners informed respondent that, after reviewing the "unambiguous" correspondence provided by GEICO, they had concluded that his conduct was "incompatible with the ethics and values of this Firm." The partners explained that respondent's January 16 and February 16 letters, which included the charts calculating his "economic loss," "suggest[ ] that your personal loss of income equals the loss of revenue to the Firm. Your representations to GEICO do not appear justifiable. You are not entitled to any portion

of the Firm's billings as you are a salaried employee of the firm...." Referring to respondent's March 26, 2001, letter to Ms. King, the memorandum stated, "[y]our letter falsely implies that your position at the Firm entitled you to some share of the revenues or profits of the Firm." The memorandum suggested that respondent had modified his claim to GEICO in his March 26 letter in an effort to "circumvent" the information given to Ms. King by the firm's human resources department. "Your statements to GEICO appear to be misleading and represent the kind of sharp practice that is unacceptable behavior for any attorney in this Firm." Finally, the equity partners announced that they were terminating respondent's employment subject to further review based on any written explanation respondent could provide by eleven o'clock the next morning.

Respondent called Ms. King the next day, April 3, and requested that she send him a letter confirming that there had been a miscommunication regarding his claim for lost income. According to respondent, he explained to Ms. King that he was not claiming a loss of approximately $23,000, and only discussed billable hours with her so that she could consider that in the context of the entire negotiation. Ms. King refused to send respondent such a letter because she did not think there had in fact been a miscommunication.

Respondent also wrote to his firm on April 3, denying that he made a specific claim for $23,000 of lost income and explaining that numerous times he discussed a more "speculative" economic loss with Ms. King—whether he could somehow be compensated for lost time. Respondent asserted that he "clearly explained to [Ms. King] that as a salaried employee [he] was not going to have any [lost wages.]" He understood Ms. King to be requesting the information about his lost time and his hourly rate to help her "determine wheth-

er [his] 'speculative' concept had a positive value or not; *i.e.*, the information was merely illustrative. [He] did not understand this to be the basis for a claim of lost income."

The next day the firm informed respondent that it would not reverse its decision to terminate his employment. The firm subsequently forwarded the correspondence among respondent, the firm, and Ms. King to the Office of Bar Counsel in compliance with its reporting obligations under Rule of Professional Conduct 8.3(a).

## II. The Procedural Background

In the Specification of Charges, Bar Counsel alleged that respondent violated Rule 8.4(c)[1] in his dealings with GEICO and in his April 3 letter to the law firm. The Hearing Committee heard testimony from Ms. King and from the firm's Human Resources Manager, two of the firm's equity partners, and respondent. Ms. King testified that respondent never disclosed "that he did not have any lost time because he was paid on a salary basis," and explained that if he had done so she would have made note of it and immediately ended discussions of his lost income claim. Respondent testified consistently with the claims he made in the April 3 letter to the firm. After considering all of the evidence, the Hearing Committee determined that respondent's testimony, "that he attempted repeatedly to 'explain' law firm billing rates to Ms. King, who did not understand his explanation," was not credible. The Committee continued,

There really can be no doubt that in March 2001 Respondent sent GEICO a demand letter seeking damages based

on the hourly-rate-times-number-of-hours formula he first submitted to the company on January 16, 2001. Nor can there be any doubt that Respondent sought to recover from GEICO anything other than the amount determined by multiplying the lost hours he claimed by an hourly rate of $295.00.

After finding that "[t]he factual record presents clear and convincing evidence that Respondent violated Rule 8.4(c) when he sought to collect damages for lost income from GEICO," the Committee recommended a sanction of public censure. The Hearing Committee failed to make any factual findings regarding respondent's alleged misrepresentations to his law firm.

The Board similarly concluded that respondent had violated Rule 8.4(c) and recommended that he be publicly censured. Focusing first on respondent's communications with Ms. King, the Board found that "[r]espondent's characterization of his 'lost hours multiplied by billing rate' damages estimate as 'lost income,' was a misrepresentation." While none of respondent's "misstatements" or "material omissions" were "patently false," his conduct towards Ms. King was "dishonest[, ...] evincing a lack of honesty, probity and integrity."

Noting that the Hearing Committee had not addressed the issue of respondent's alleged misrepresentations to his law firm, the Board exercised its power to make additional factual findings on that issue. *See* Board on Professional Responsibility Rule of Procedure 13.7.[2] It concluded that there was "no reasonable innocent explanation for the misrepresentations" in the

---

1. Rule 8.4(c) of the District of Columbia Rules of Professional Conduct reads, in part,

 It is professional misconduct for a lawyer to: ... (c) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation[.]

2. Rule 13.7 of the Board on Professional Responsibility's Rules of Procedure provides:

 Upon conclusion of the oral argument or its waiver, the Board may affirm, modify, or expand the findings and recommendation of the Hearing Committee. Alternatively, the Board may remand the matter to the

April 3 letter to the firm. Indeed, the Board found that the letter contained "a series of blatant lies concerning his conversations with Ms. King." "Respondent's blatant misrepresentations to his firm [were] clear and convincing evidence of dishonesty in violation of Rule 8.4(c)."

Finally, the Board recommended that this court issue a public censure. The Board thought that a more serious sanction, such as disbarment or suspension, was unwarranted because respondent's behavior was not related to the practice of law and his "self-interest was neither hidden nor improper." However, the Board acknowledged that "the duration of [respondent's] dishonesty and his attempts to cover it up with new falsehoods once the dishonesty was exposed" demonstrated the seriousness of his misconduct. A dissenting member of the Board recommended a sixty-day suspension, concluding that respondent's behavior paralleled misconduct in cases where we have imposed a suspension rather than a public censure or reprimand.[3] The Office of Bar Counsel and respondent filed exceptions to the report and recommendation of the Board on Professional Responsibility.

We have received briefs and have heard argument from respondent, from the Board, and from Bar Counsel. Bar Counsel agrees with the Board's conclusion that respondent violated Rule 8.4(c), but recommends a six-month suspension rather than a public censure. Respondent argues that he is not guilty of misconduct and, alternatively, asks us to impose either a reprimand or a public censure.

---

Hearing Committee for further proceedings, or the Board may dismiss the petition. Review by the Board shall be limited to the evidence presented to the Hearing Committee, except in extraordinary circumstances determined by the Board. When reviewing the findings of a Hearing Committee, the Board shall employ [a] "substantial evidence on the record as a whole" test.

## III. Standard of Review

 We review the Board's report and recommendation under D.C. Bar R. XI, § 9(g)(1), which provides that "the Court shall accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record, and shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." "Generally speaking, if the Board's recommended sanction falls within a wide range of acceptable outcomes, it will be adopted and imposed." *In re Goffe,* 641 A.2d 458, 463–64 (D.C.1994). However, despite the considerable deference we give to the Board's recommendation, "this Court retains the ultimate choice of sanction." *In re Slattery,* 767 A.2d 203, 215 (D.C.2001); *accord, e.g., In re Pierson,* 690 A.2d 941, 948 (D.C. 1997); *In re Lenoir,* 604 A.2d 14, 15 (D.C. 1992). In determining an appropriate sanction, we are guided by the following factors: "1) the nature of the violation; 2) the mitigating and aggravating circumstances; 3) the need to protect the public, the courts and the legal profession; and 4) the moral fitness of the attorney." *In re Slattery,* 767 A.2d at 214–15 (citing *In re Goffe,* 641 A.2d at 464).

## IV. Analysis

### A. Respondent Was Dishonest

 The Board's factual findings are supported by substantial evidence in the record and we agree that respondent violated Rule 8.4(c). The term "dishonesty"

---

When making its own findings of fact, the Board shall employ a "clear and convincing evidence" standard.

3. The dissent relied on *In re Kennedy,* 542 A.2d 1225 (D.C.1988) (ninety-day suspension); *In re Zeiger,* 692 A.2d 1351 (D.C.1997) (sixty-day suspension); and *In re Jackson,* 650 A.2d 675 (D.C.1994) (six-month suspension).

is a general term "which encompasses fraudulent, deceitful, or misrepresentative behavior." *In re Shorter*, 570 A.2d 760, 767 (D.C.1990). In addition, it includes "conduct evincing a lack of honesty, probity or integrity in principle; a lack of fairness and straightforwardness." *Id.* at 768 (internal quotation marks and citation omitted). "Thus, what may not legally be characterized as an act of fraud, deceit or misrepresentation may still evince dishonesty."[4] *Id.*

Respondent's multiple misstatements and material omissions over the course of his dealings with Ms. King not only "evince a lack of fairness and straightforwardness" but also amount to misrepresentations, as the Board found. Compounding that dishonest behavior was respondent's dissembling after his law firm became aware of his efforts to mislead Ms. King. Respondent's April 3 letter to his firm asserted that he explained to Ms. King, on four separate occasions, that he was a salaried employee and was not going to have any lost wages. The Hearing Committee credited Ms. King's testimony denying that respondent ever made those explanations. Deferring to the credibility determinations of the Hearing Committee, *see In re Micheel*, 610 A.2d 231, 234 (D.C.1992), we conclude that respondent lied to the firm in his April 3 letter. Indeed, the Board characterized the letter as "a series of blatant lies."

Respondent asserts that he did not have dishonest intent, *see In re Romansky*, 825 A.2d 311, 315 (D.C.2003), and that this case involves "aggressive conduct between business adversaries," "but not dishonesty." He points out that he sent Ms. King his 1999 tax return, his W–2 statement for 2000, and his billing records and contends that, when analyzed, these documents would have revealed that he was not being compensated at the rate of $295 or $325 an hour. However, presented with these arguments, the Board concluded that he acted with the requisite dishonest intent, and its assessment is supported by substantial evidence. As the Board explained, "[t]he nature of Respondent's misstatements and material omissions is evidence, by itself, of his intent to deceive Ms. King into believing that he had actually lost income at a rate governed by his billing rate." Moreover, the Board's conclusion that the April 3 letter to the firm contained "a series of blatant lies" speaks for itself.[5]

**4.** Respondent argues for the first time on appeal that he has been deprived of due process because the dishonesty standard of Rule 8.4(c) is "unduly vague." We reject this argument. First, respondent has not preserved this issue for our review because he failed to raise it before either the Hearing Committee or the Board. *See In re James*, 452 A.2d 163, 168 (D.C.1982) (declining to consider due process objection to notice of disciplinary charges); *see also In re S.K.*, 564 A.2d 1382, 1384 n. 2 (D.C.1989) (declining to consider vagueness challenge to statute raised for the first time on appeal). Even if we were to consider the merits of this argument, a claim of vagueness must be decided in the context of narrowing interpretations by the court. *James v. United States*, 350 A.2d 748, 750 (D.C.1976). In light of our discussions in *Slattery* and *Shorter*, respondent was not caught by surprise. Applying a test from *Shorter*, the Board found that respondent's conduct toward Ms. King "evinc[ed] a lack of honesty, probity and integrity." *See In re Shorter*, 570 A.2d at 768 (internal quotation marks omitted). It also concluded that his letter to the law firm contained "a series of blatant lies...." "One to whose conduct a statute [or rule] clearly applies may not successfully challenge it for vagueness." *Parker v. Levy*, 417 U.S. 733, 756, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974).

**5.** By contrast, the Board concluded that "[t]he record supports Respondent's assertion that he honestly believed that his bonus had been negatively affected by his lower hours due to the accident." We therefore do not consider his representations about the bonus to be dishonest.

Respondent also argues that his claim for lost income was permissible under the "collateral source rule," which "provides, as a general proposition, that an injured party may recover full compensatory damages from a tortfeasor regardless of the payment of any amount of those damages by an independent party...." *Bushong v. Park*, 837 A.2d 49, 57 (D.C.2003). But the issue is not whether respondent had *some* valid claim for lost time and inconvenience. (Bar Counsel acknowledges that respondent could have sought some recovery or compensation for the time he took off because of the accident and/or for medical appointments.) His dishonesty was "in falsely claiming to have lost income in an amount calculated by his billing rate."

Thus, as charged by Bar Counsel, respondent was dishonest in his ·dealings with GEICO and in separate, but related, explanations to his law firm. Having determined that respondent violated Rule 8.4(c), we turn to choosing an appropriate sanction.

### B. We Suspend Respondent for Thirty Days

 We agree with the Board's assessment that "Respondent's misconduct is unlike any we have reviewed...." Finding no case involving comparable misconduct, we are not constrained by the need to impose a consistent sanction. *See In re Cleaver–Bascombe*, 892 A.2d 396, 402 (D.C. 2006) (quoting *In re Reback*, 513 A.2d 226, 230 (D.C.1986) (en banc)). Therefore, our main concern is whether the recommended sanction of public censure is unwarranted. *See* D.C. Bar R. XI, § 9(g)(1).

 In support of their respective recommendations, the Board and respondent emphasize that he was not representing a client and they remind us that "clients in general and the administration of justice are the primary focus of protection." *In re Kennedy*, 542 A.2d 1225, 1231

(D.C.1988); *see also id.* at 1230 ("dishonest actions committed outside of the representation of a client ... need not necessarily be sanctioned to the same degree as similar acts committed in the course of representation"). While this undoubtedly is an appropriate consideration (and one we take into account), we believe their analysis undervalues guidance we have highlighted in other opinions: "the principal reason for discipline is to preserve the confidence of the public in the integrity and trustworthiness of lawyers in general." *In re Slattery*, 767 A.2d at 216 (quoting *In re Addams*, 579 A.2d 190, 194 (D.C.1990) (en banc)). "The discipline we impose should serve not only to maintain the integrity of the profession and to protect the public and the courts, but also to deter other attorneys from engaging in similar misconduct." *In re Reback*, 513 A.2d at 231 (*citing In re Wild*, 361 A.2d 182, 183 (D.C. 1976)); *see, e.g., In re Steele*, 630 A.2d 196, 200 (D.C.1993). Considering all the purposes of professional discipline, we believe the appropriate sanction lies somewhere between a six-month suspension and a public censure.

The Board's recommendation of a public censure does not rest on a comparison to any one case, but instead is based on its balancing of several considerations. The Board concluded that the following factors weighed against a more serious sanction such as suspension or disbarment: that respondent's misconduct 1) was not related to the practice of law; 2) was not prejudicial to a third party; and 3) was the first instance of discipline in respondent's career. His self-interest was not an aggravating factor because it "was neither hidden nor improper." Furthermore, respondent "was advancing his own case for compensation in an arena noted for hard bargaining and aggressive give-and-take." On the other hand, the Board reasoned, "the duration of [respondent's] dishonesty

and his attempts to cover it up with new falsehoods" were aggravating factors.

The Board correctly points out that sanctions for violating Rule 8.4(c) "run the gamut from informal admonition to disbarment." Accepting, for the moment, the Board's conclusion that respondent's conduct was not practice-related, his dealings with GEICO nevertheless failed to meet the standard of honesty expected of attorneys even in their personal, non-professional lives. *See In re Jackson*, 650 A.2d 675, 677 (D.C.1994) ("A lawyer is held to a high standard of honesty, no matter what role the lawyer is filling: acting as lawyer . . . or conducting the private affairs of everyday life."); *see also In re Hutchinson*, 534 A.2d 919, 924 (D.C.1987) (en banc) ("Lawyers have a greater duty than ordinary citizens to be scrupulously honest at all times, for honesty is basic to the practice of law." (internal quotation marks omitted)); D.C. Bar R. XI, § 2(a) (attorneys have a duty, "at all times and in all conduct, both professional and personal, to conform to the standards imposed upon members of the Bar as conditions for the privilege to practice law"). In fact, we discipline attorneys for conduct completely outside the practice of law. *See, e.g., In re Soininen*, 783 A.2d 619 (D.C.2001) (violation of Rule 8.4(c) based in part upon attempt to steal flowers and potting soil); *In re Kent*, 467 A.2d 982 (D.C.1983) (shoplifting from department store).

Our principal concern with the Board's analysis centers on its treatment of respondent's April 3, 2001, letter to his law firm. Although Bar Counsel charged respondent with making "a number of false representations" in the letter, the Board treated that conduct primarily as an aggravating factor in its assessment of respondent's misrepresentations to GEICO. That letter was, however, a distinct act of misconduct, and we assign greater weight than the Board to that "series of blatant lies." Moreover, GEICO may not have been prejudiced, but that was due to Ms. King's diligence in discovering the misrepresentations and hardly reflects favorably on respondent. Finally, although respondent may not have been representing a client, he did hold himself out as a lawyer when dealing with GEICO, and his conduct reflects poorly on the legal profession. Keeping in mind that "the principal reason for discipline is to preserve the confidence of the public in the integrity and trustworthiness of lawyers in general," *In re Slattery*, 767 A.2d at 216, we conclude that a public censure is not sufficient to convey our disapproval of respondent's conduct. *See In re Kennedy*, 542 A.2d at 1228 ("Dishonest conduct by attorneys . . . erodes public faith in the ethics of practicing attorneys.").

On the other hand, we are not convinced that a six-month suspension is appropriate. *Cf. In re Elgin*, 918 A.2d 362 (D.C.2007) (upholding the Board's recommendation of a six-month suspension for violations of myriad rules, including Rule 8.4(c)). Bar Counsel relies on *In re Kennedy*, *In re Jackson*, and *In re Zeiger*, 692 A.2d 1351 (D.C.1997), but he has not persuaded us that these cases are sufficiently analogous to the facts presented here. The court in *Kennedy* imposed a ninety-day suspension where the attorney 1) failed to remit to his law firm a retainer fee received from a firm client, 2) instructed another client of the firm to send payment to his new office after he had left the firm, 3) misrepresented his salary to the loan office of a savings and loan institution, and 4) actively practiced law in the District of Columbia although he had failed to pay bar dues. *In re Kennedy*, 542 A.2d at 1226. The court found that the first three violations were not directly related to the practice of law, but concluded that several aggravating factors, including a history of discipline and lack of remorse, justified the sanction.

*See id.* at 1231. The attorney in *Zeiger* altered his client's medical records and submitted them to the opposing party's insurer, violating three Rules of Professional Conduct, including Rule 8.4(c). *See In re Zeiger,* 692 A.2d at 1352 (sixty-day suspension). The attorney in *Jackson,* who was also a certified public accountant, violated former Disciplinary Rule 1–102(A)(4) (which contained language identical to Rule 8.4(c)) when he prepared his client's tax returns without documentation to support various deductions. *See In re Jackson,* 650 A.2d at 677. He was suspended for six months. *Id.* at 675. The conduct in *Kennedy, Jackson,* and *Zeiger* involved, to some degree, clients—a factor absent here. These cases do not support Bar Counsel's request for a six-month suspension.

On balance we conclude that a suspension of thirty days is warranted. We recognize that respondent was not representing a client and that he has no prior history of discipline. However, our choice of sanction demonstrates our disapproval of respondent's behavior more than a public censure would. Moreover, this sanction is commensurate with sanctions in comparable cases. *See, e.g., In re Hawn,* 917 A.2d 693 (D.C.2007) (thirty-day suspension for falsifying resume and altering law school transcripts in attempt to obtain legal employment); *In re Schneider,* 553 A.2d 206 (D.C.1989) (thirty-day suspension for lawyer who altered receipts to obtain reimbursement to which he was entitled).

### V. Conclusion

We uphold the Board's conclusion that respondent violated Rule 8.4(c) but conclude that a thirty-day suspension is warranted. Accordingly, it is,

ORDERED that Salvatore Scanio be suspended from the practice of law in the District of Columbia for a period of thirty days, effective thirty days from the date of this opinion. *See* D.C. Bar R. XI, § 14(f). For the purpose of seeking reinstatement to the Bar, respondent's suspension shall not begin until he complies with the affidavit requirements of D.C. Bar R. XI, § 14(g).

*So ordered.*