**In re Michael A. ROMANSKY, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 99–BG–1626.**

District of Columbia Court of Appeals.

Argued Dec. 5, 2000.

Decided June 5, 2003.

Earl J. Silbert, with whom Robert A. Salerno and Lorrie A. Giventer, Washington, DC, were on the brief, for respondent.

Michael S. Frisch, Senior Assistant Bar Counsel, with whom Joyce E. Peters, Bar Counsel at the time the brief was filed, and John T. Rooney, Assistant Bar Counsel, were on the brief, for the Office of Bar Counsel.

Elizabeth J. Branda, Executive Attorney, for the Board on Professional Responsibility.

Before STEADMAN, GLICKMAN and WASHINGTON, Associate Judges.

WASHINGTON, Associate Judge:

The Board on Professional Responsibility ("Board") concluded that respondent, Michael A. Romansky, acted dishonestly in violation of Rule 8.4(c) of the Rules of Professional Conduct when he: 1) added hours to the fee bills of two Firm clients in order to "premium bill" contrary to the provisions of their existing fee agreements that only hours actually worked would be billed and without notifying the clients of the premium billing and 2) authored, back-dated and used, without the client's approval, a purported letter from the client. For these violations, the Board recommended that Romansky be suspended from the practice of law for thirty days. Before this court, Romansky contends that there was insufficient evidence to support the Board's finding that he possessed the requisite dishonest intent to commit a violation of Rule 8.4(c). Romansky also argues that the recommended sanction is too harsh. Bar Counsel takes exception to the Board's finding that Romansky's handling of a third account, his father's account, did not violate Rule 8.4(c). Bar Counsel also contends that a sanction of six months should have been recommended by the Board because a thirty-day suspension is

inconsistent with prior decisions of this court. We disagree in part with the Board's Report and Recommendation and remand for further findings consistent with this opinion.

## I.

The primary facts of this case are largely not in dispute. Romansky is a partner with the law firm of McDermott, Will & Emery ("Firm"). From 1984 to 1995, Romansky was the leader of the Firm's health care practice group in Washington, D.C. As the partner in charge of the health care practice group, Romansky had significant client billing responsibilities. It was his handling of those responsibilities that led to an internal investigation by the Firm into Romansky's billing practices, which culminated in Bar Counsel charging him with six instances of dishonesty in violation of Rule 8.4(c) of the D.C. Rules of Professional Conduct.

Romansky was charged with four instances of violating Rule 8.4(c) for dishonestly inflating the bills he sent to four clients. Romansky would add a premium without telling the clients what their bills would have been if Romansky had computed the bills strictly on the basis of the actual professional time invested in the representation at the agreed-upon hourly billing rates. Specifically, after reviewing a pre-bill for a client, Romansky would add time charges to the number of hours that another Firm attorney had recorded for working on that client's matter and then send a final bill to the client, which listed only the amount due and did not disclose that a premium had been added to the bill. At the time of this conduct, the Firm was transitioning to a new client engagement letter. The old letter stated that the Firm's "fees are determined by the actual time spent by our professional staff...." The new letter, however, stated that "fees will be based *primarily* on the time spent by each professional, although other factors may be taken into consideration." (Emphasis added). In two of the instances, the Board found no violation of Rule 8.4(c) because the fee agreements with those clients permitted so-called premium billing, and no one has challenged that determination before this court.[1] In the other two instances, the Board found that Romansky's conduct was dishonest within the meaning of Rule 8.4(c) precisely because the fee agreements did not permit premium billing. These clients, Dr. Siepser and Surgical Health, had signed the old engagement letter and should have been billed only for the actual hours worked. In reaching its conclusion that Romansky violated Rule 8.4(c), the Board did not make an explicit finding as to whether Romansky overbilled Dr. Siepser and Surgical Health knowingly or recklessly or instead did so in the good faith but mistaken belief that their fee agreements allowed premium billing.

The fifth alleged violation involved Romansky's direction to an associate attorney of the Firm to charge the time she spent working on a matter for Romansky's fa-

1. There was conflicting testimony on the issue of the proper way to premium bill. James Sneed, the partner in charge of the Firm's internal investigation of Romansky's billing practices, testified that while certain of the Firm's retainer agreements do allow for premium billing, there are strict requirements that must be followed before a premium is actually charged. Among those obligations is the requirement that the client be notified in advance that a premium is being charged by the Firm and the reason for the premium, even when the engagement letter provides for premium billing. However, Mr. Charles Work, Managing Partner of the D.C. Office at the time of the hearing, testified that if the engagement letter permits premium billing, then an attorney is not required to disclose to the client when the client is being charged a premium.

ther, Dr. Romansky, to another Firm client, Outpatient Ophthalmic Surgery Society (OOSS). OOSS pays a fixed annual retainer for legal services. The Board concluded that since the client had a fixed fee arrangement with the Firm and was never actually billed for the time the associate spent on Romansky's father's work, the matter was strictly an internal record keeping matter and Romansky did not violate Rule 8.4.

The final charge of dishonesty involved Romansky's preparation and use of a purported client letter. In response to the internal Firm investigation of Romansky's billing practices, Romansky asked the Executive Director of Federated Ambulatory Surgery Association (FASA), a client, to draft a letter regarding the quality and amount of work done by the Firm and Romansky.[2] The Executive Director agreed; however, she stated that since she would be out of town the following week, Romansky should send a draft letter to her secretary, which could be read to her when she called into the office. Rather than following the client's directions, Romansky called the client's secretary and dictated a draft over the phone. Romansky then asked the secretary to backdate the letter, put it on letterhead and fax it to Romansky. The letter was never approved by the client. When the client discovered that the letter had been obtained without her permission, she requested the letter not be used for any purpose. Although Romansky assured the client that the letter had been destroyed and had not and would not be used, Romansky had already attached the letter to a billing summary that he submitted to the Firm as part of the investigation. The billing summary falsely stated that the

letter had been obtained "a month or so ago." Romansky later spoke to the firm's internal investigator and informed the investigator that he had acted improperly with regard to the FASA letter; however, Romansky did not inform the Firm that the FASA letter had not been received a month or so before.

The Board noted that the violation for the FASA letter alone would warrant a thirty-day suspension. The Board concluded that Romansky's behavior in connection with the FASA letter demonstrated a series of dishonest acts conducted over a two-week period. He drafted a letter in the name of a client, which praised his work as an attorney, backdated it, and used it before the client could verify the content's accuracy. He then lied to his client regarding the letter's use and its continued existence in the Firm's files. As the Board noted, Romansky's misconduct "was not an isolated incident on a single day, under the pressure of an unanticipated, suddenly arising situation." Instead, the Board specifically expressed that respondent "made a deliberate decision to engage in a pattern of dishonest statements ... in writing, in documents he prepared." The Board additionally characterized respondent's activities as calculated and disingenuous and that backdating the letter was "particularly troublesome."

After finding three violations for dishonesty, the Board recommended a thirty-day suspension, noting that the FASA letter alone would justify the thirty days. Romansky now challenges the Board's decision. Romansky does not dispute the facts alleged by Bar Counsel in the complaint. Instead, he argues that his conduct, at least with respect to the billing practices,

2. There have been no assertions that Romansky acted dishonestly in his handling of this client's bills.

was not dishonest and was, at most, negligent, the result of his good faith, though erroneous belief that the fee agreement permitted premium billing. He contends that any misattributed billings to a client were caused by his negligent failure to check the client's retainer agreement with the Firm to verify whether the agreement permitted premium billing before making changes to the amount of fees charged on the pre-bill. Furthermore, Romansky contends that Bar Counsel did not prove that he intended to be dishonest because premium billing was allowed under some of the Firm's retainer agreements, thus dishonest intent cannot be reasonably inferred from the act of premium billing alone.

Bar Counsel takes exception to the Board's findings and recommended sanction, arguing that the Board erred in not finding that Romansky's handling of a third account, his father's account, was also a violation of Rule 8.4(c) and that the sanction of thirty days was inconsistent with our other decisions.

## II.

▮▮▮ The Board concluded that Romansky acted dishonestly when he premium billed, without notice, clients who had signed the old engagement letter. According to Rule 8.4(c), attorneys are prohibited from engaging "in conduct involving dishonesty, fraud, deceit or misrepresentation." This court has stated that dishonesty, fraud, deceit, and misrepresentation are four different violations, that may require different quantums of proof. *See In re Shorter,* 570 A.2d 760, 767 (D.C.1990) (expressing that the "four terms should be understood as separate categories, denoting differences in meaning or degree."). Hence, while an intent to defraud or deceive may be required for a finding of fraud, dishonesty may result from conduct evincing "a lack of honesty, probity or integrity in principle; [a] lack of fairness and straightforwardness...." *Tucker v. Lower,* 200 Kan. 1, 434 P.2d 320, 324 (1967) (citation omitted). Thus, "what may not legally be characterized as an act of fraud, deceit or misrepresentation may still evince dishonesty." *Shorter,* 570 A.2d at 768.

▮▮▮ When examining whether the actions were dishonest, "[w]e take as a given that, for disciplinary purposes, dishonesty does not always depend on a finding of intent to defraud or deceive." *In re Estate of Corriea,* 719 A.2d 1234, 1242 (D.C.1998) (citing *In re Addams,* 579 A.2d 190, 191–92 (D.C.1990) (en banc)). Our case law has consistently found that when Bar Counsel presents clear and convincing evidence that an action is obviously wrongful and intentionally done, the performing of the act itself is sufficient to show the requisite intent for a violation. However, when the act itself is not of a kind that is clearly wrongful, or not intentional, Bar Counsel has the additional burden of showing the requisite dishonest intent. *Compare In re Jones–Terrell,* 712 A.2d 496, 500 (D.C. 1998) (upholding the Board's conclusion that an attorney acted dishonestly when she made intentional misrepresentations about a guardianship petition, although she did not act out of "evil or corrupt intent"); *In re Hessler,* 549 A.2d 700, 701 n. 3 (D.C.1988) (commenting that misappropriation is a per se offense that does not require a finding of intent); *In re Schneider,* 553 A.2d 206 (D.C.1989) (stating that dishonest intent could be established by wrongful conduct itself, noting that "deliberate falsification of documents" was a dishonest act); *with In re Stiller,* 725 A.2d 533, 538–39 (D.C.1999) (noting that an attorney who made structured bank deposits was not dishonest because the act alone did not demonstrate dishonesty or a fraudulent state of mind); *In re Hutchinson,*

534 A.2d 919, 923 (D.C.1987) (respondent was found guilty of a misdemeanor under the Securities Exchange Act of 1934 but because his misdemeanor conviction required no showing of specific intent to commit the crime, we held that "[i]n the absence of affirmative proof of a fraudulent intent or state of mind," there [was] no violation).

■ It has also "been suggested that sufficiently reckless conduct is enough to sustain a violation of the rule." *In re Hager,* 812 A.2d 904, 916 (D.C.2002) (citing *Jones–Terrell,* 712 A.2d at 499). Although we have suggested that a showing of recklessness can sustain a violation of the Rule, we have yet to squarely apply the standard in cases such as this. However, the recklessness standard has been most frequently articulated in cases involving disbarrable misappropriation of funds—another violation under the general rubric of dishonesty. In *In re Anderson,* 778 A.2d 330, 338–39 (D.C.2001), we noted that "the central issue in determining whether a misappropriation is reckless is *how* the attorney handles entrusted funds, whether in a way that suggests the unauthorized use was inadvertent or the result of simple negligence, or in a way that reveals an intent to treat the funds as the attorney's own or a conscious indifference to the consequences of his behavior for the security of the funds." *Id.* at 339; *see also* BLACK'S LAW DICTIONARY 1277 (7th ed.1999) (recklessness is a "state of mind in which a person does not care about the consequences of his or her action"); 57 AM. JUR. 2D Negligence § 302 (1989) ("Reckless misconduct requires a conscious choice of a course of action, either with knowledge of the serious danger to others involved in it or with knowledge of facts that would disclose this danger to any reasonable person."). In misappropriation cases applying the recklessness standard,

"Bar Counsel [must] prove, by clear and convincing evidence, conduct sufficient to support an inference that [the respondent] purposely dealt with and used the funds owed to [the client] as his own, or else that he consciously disregarded the risk that those funds would be used for unauthorized purposes." *Anderson,* 778 A.2d at 339. When determining sanctions for misappropriation cases, we have concluded that the sanction depends on whether the misappropriation was negligent, reckless or intentional. For example, a finding of negligent misappropriation does not support a sanction of disbarment; however, a finding of reckless or intentional misappropriation is sufficient to support and, indeed, in virtually all cases to compel such a sanction. *See, e.g., In re Addams,* 579 A.2d 190, 191 (D.C.1990) (en banc).

The Board's rationale in finding dishonesty is difficult to ascertain with precision. The Board, relying on *In re Schneider,* appears to have focused on the narrow issue of whether the act of knowingly charging a premium, without notice, to clients who had signed the old engagement letter is a violation of Rule 8.4(c). It appears that the Board may have concluded that the mere act of adjusting client bills without authorization is sufficient evidence of dishonest intent to warrant a Rule 8.4(c) violation. If our understanding of the Board's analysis is correct, we must disagree. Every unauthorized mistake in rendering a client's bill, even if unintentional and the result of no more than simple negligence, does not necessarily constitute dishonesty.

The Board placed too much weight on *In re Schneider,* 553 A.2d 206 (D.C.1989). In *In re Schneider,* an attorney falsified travel receipts by inserting the number "1" before each charge and then overstated the amount of the total receipts by $800.00. The attorney contended that he altered the

amount of the receipts to expedite reimbursement for extra travel related expenses on behalf of the client and that he had no intent to deceive the Firm or the client. Nevertheless, we held that Schneider's dishonest intent could be established by the wrongful conduct itself, noting that "deliberate falsification of documents" was a dishonest act. *See Schneider*, 553 A.2d at 209. *Schneider*, however, did not address the "situation where the attorney is unaware that he has even committed the act which is the basis of the disciplinary action" because Schneider plainly knew that the alteration of receipts was not the appropriate way to seek reimbursement. *Id.* at 210. In our case, we must address the circumstance contemplated by the *Schneider* court, but not addressed. Romansky, while conceding that he premium billed his clients, contends that he did not know that it was wrongful as unauthorized under the actual client billing agreement, thus any violation was merely negligent; while in *Schneider*, the attorney clearly understood that falsifying credit card receipts was wrongful conduct. Thus, it is inappropriate for the Board to rely so heavily on the *Schneider* line of cases.

■ The fundamental problem we have with the Board's decision, and the reason we remand, is that the Board made no findings as to Romansky's actual state of mind in the existing circumstances. In order to find a violation of the Rule in this case, the Board must find that Romansky acted knowingly or recklessly when he adjusted the client bills. In doing so, the Board must determine whether Romansky's explanation for his conduct is true. When conducting its analysis, the Board must clearly articulate its findings and make credibility determinations to support its conclusions. If Romansky violated the fee agreements knowingly, or if he did so recklessly—, *i.e.*, consciously disregarding the risk that the agreements did not permit premium billing—then his conduct was dishonest and did violate Rule 8.4(c). If Romansky's violation of the fee agreements was not knowing or reckless, but instead was based on a good faith belief that his actions were authorized, then under our case law his conduct would be simply negligent and not dishonest within the meaning of Rule 8.4(c) because he did not know he was overcharging his clients.[3] If however, Romansky knew that he was overcharging his clients or if he consciously disregarded the risk that he was doing so, he could be found to have violated Rule 8.4(c). Bar Counsel had the burden of proving that Romansky had a culpable state of mind by clear and convincing evidence. From the cold record before us, we are not prepared to hold that Bar Counsel did not meet that burden as a matter of law; hence we must remand for the Board to clarify whether it made (or would make) a finding of knowing or reckless conduct or not.

### III.

■ Bar Counsel challenges the Board's conclusion that Romansky was not dishonest in his handling of his father's account.

---

3. When examining the recommended sanction, it could be argued that the Board thought Romansky's actions were merely negligent. The Board clearly indicated that the FASA violation warranted a thirty-day suspension on its own. Thus, the Board, in effect, failed to issue any sanction for the billing violations. The failure to recommend a sanction for the billing violations, combined with the Board's vague analysis, suggests that the Board was not convinced that Romansky's handling of these accounts was dishonest. We have articulated the various standards under which an individual can be found to have violated Rule 8.4(c) in order for the Board, on remand, to clearly articulate whether it believes Romansky's actions were dishonest. If the Board finds a dishonesty violation, we assume they will recommend a more appropriate sanction.

As discussed above, Romansky assigned an associate to work on his father's account. However, Romansky instructed the associate to bill her time to another client, OOSS. OOSS paid a flat fee for legal services and was never billed for the time charged to its account. The Board concluded that although this was dishonest in a literal sense, since the matter did not involve billing to a client, this was strictly an internal accounting matter. Although the Board did not find a violation, it did state that such acts may violate Rule 8.4(c). While the Board's reasoning is not entirely clear, it seems to imply that a Rule 8.4(c) violation would have occurred if there was an economic impact from the dishonest action. Although a dishonest act that creates a financial impact on a client or Firm funds would likely violate Rule 8.4(c), these are not the only acts that create such a violation. As discussed previously, dishonesty may result from conduct evincing "a lack of honesty, probity or integrity in principle; [a] lack of fairness and straightforwardness...." *Tucker,* 434 P.2d at 324.

In this case, Romansky instructed an associate to bill her time to a client other than the one for whom she was actually doing the work. While we agree with the Board that every violation of internal law firm procedure should not rise to the level of a Rule 8.4(c) violation, in this case, we are not dealing solely with a violation of internal firm procedure by Romansky. Internal firm procedures were clearly not followed when Romansky did not set up a new account for Romansky's father. However, Romansky's dishonest act continued when he asked the associate to bill her time to another client, in effect asking the associate to also violate internal firm procedure and to engage in what can fairly be described as dishonest conduct. Romansky's actions were egregious because they not only violated internal firm procedure, but also encouraged an associate to do the same. Although there was no financial impact to either the Firm or the client, Romansky's actions demonstrated a lack of integrity and dishonesty and violated Rule 8.4(c).

## IV.

We now turn to the issue of sanctions. Under D.C.App. R. XI, § 9(g)(1), this court adopts the Board's recommended sanction "unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." Thus, we give the Board's recommended sanction great deference and generally endorse the Board's recommendation if it falls within an acceptable range. *See In re Goffe,* 641 A.2d 458, 463–64 (D.C.1994); *In re Hutchinson,* 534 A.2d 919, 924 (D.C.1987) (en banc); *In re Haupt,* 422 A.2d 768, 771 (D.C.1980). Because we must remand the case to the Board for specific findings consistent with this opinion, addressing the issue of sanctions is premature.

For the foregoing reasons the case is remanded for findings consistent with this opinion.

*So ordered.*