*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 19-BG-240

IN RE JOHNNIE L. JOHNSON, III, RESPONDENT.

A Member of the Bar
of the District of Columbia Court of Appeals
(Bar Registration No. 235614)

On Report and Recommendation of the
Board on Professional Responsibility
(Bar Docket No. 2016-D112)
(Board Docket No. 17-BD-003)

(Argued December 8, 2020                          Decided May 26, 2022)

*Johnnie L. Johnson, III*, pro se.

*Hamilton P. Fox, III*, Disciplinary Counsel, with whom *Julia L. Porter*, Deputy Disciplinary Counsel, and *Myles V. Lynk*, Senior Assistant Disciplinary Counsel, were on the brief, for the Office of the Disciplinary Counsel.

Before EASTERLY and MCLEESE, *Associate Judges*, and WASHINGTON, *Senior Judge*.

PER CURIAM: The present disciplinary matter comes to us from the Board of Professional Responsibility's ("the Board") review of an Ad Hoc Committee ("the Committee") Report and Recommendation that respondent Johnnie L. Johnson, III be disbarred for flagrant dishonesty. The issues on review are whether the Board's factual findings, ultimately based on the Committee's, are supported by substantial

evidence, and whether the recommended sanction of disbarment is consistent and warranted. For the reasons below, we adopt the Board's factual findings as supported by substantial evidence and concur that disbarment is the appropriate remedy.

## I. Background

H.G., a former D.C. Public Schools bus driver, unsuccessfully pursued an appeal of termination of his workers' compensation benefits in June 2012. Soon afterwards, in the same month, he met respondent Johnnie L. Johnson, III and engaged him as an attorney to represent him in continuing his workers' compensation appeal. Johnson represented H.G. from June 2012 until August 2015 when H.G. retained new counsel, Harold Levi, to replace Johnson in his ongoing workers' compensation case.

In June 2012, Johnson entered his appearance as counsel for H.G. in the workers' compensation appeal. In July 2012, he filed a two-page application for a formal hearing that H.G. had filled out by hand and to which Johnson added two type-written sentences. In September 2012, Johnson propounded seemingly boilerplate discovery requests. He also filed a short brief in opposition to the

District's September 2012 motion to dismiss H.G.'s claim based on a failure to comply with a scheduling order.  In November 2012, Johnson attended a forty-five to sixty-minute hearing where H.G. testified; however, H.G. stated at the later disciplinary hearing that Johnson did not meet with him ahead of time or prepare him for this workers' compensation hearing.  While awaiting a decision from the administrative law judge ("ALJ"), Johnson prepared a half-page letter to an insurer who had notified H.G. that it would terminate his accident insurance, explaining the pending workers' compensation appeal and claiming the District was responsible for the premiums.

In June 2014, the ALJ granted H.G.'s claims for medical treatment and wage loss benefits.  In an application for review of that decision, Johnson claimed that the ALJ erred in failing to award attorney's fees and cited to a provision of D.C. Code § 1-623.27(b) (2016 Repl.) that limits the amount of and manner in which one may obtain attorney's fees in a workers' compensation claim (no more than twenty percent of the total awarded to the client, only after ALJ approval, and only from the D.C. government).  In July 2014, the day before filing that application, Johnson received a check for $58,050.63 payable to H.G.  Four days later, Johnson called H.G. to inform him of receiving the check and to make arrangements to meet two days later at a Wells Fargo bank branch in Maryland.

At that meeting in July 2014, Johnson informed H.G. that he was entitled to one-third of the total amount of the check ($19,350.21). Johnson and H.G. endorsed the check, and the bank issued two cashiers' checks – one to H.G. for $37,700.42 and the other to Johnson for $19,350.21 – along with $1,000 in cash for H.G. Johnson provided a memorandum to H.G. that stated,

> This office agreed to represent you for an agreed upon fee of 33 1/3% of the settlement amount or award in you[r] matter. Accordingly, this office received a check in the amount of $58,050.63 as a resolution of your case. Although there may be additional funds owed to you in this matter, this office's agreed upon fees out of the settlement is $19,350.21, which represents 33 1/3% of $58,050.63. Thus your share of the $58,050.63 is $[]38,700.42. This is $19,350.21 plus $38,700.42 equals $58,050.63.

In July 2014, the District filed an application for review of the decision granting H.G. benefits, as well as an opposition to Johnson's application for review in order to obtain attorney's fees. Johnson did not respond to the District's application for review. Pending review of both applications – Johnson's concerning attorney's fees and the District's – Johnson sent a letter to the administrator for the District's workers' compensation system requesting a lien on payments to H.G., among other claimants that Johnson represented, without disclosing that he had already received one-third of H.G.'s award or telling H.G.

that he sought the lien. Johnson's application for review concerning attorney's fees was denied and the District's application was granted, resulting in H.G.'s claim being remanded. Johnson filed an appeal of the remand order but failed to respond to this court's show cause order for why a petition for review of a non-final order should not be dismissed, resulting in dismissal of that appeal. In July 2015, the ALJ issued a compensation order on remand reinstating H.G.'s benefits without further hearing or additional briefing.

Before resolution of his workers' compensation appeal, H.G. filed a request for fee arbitration and a complaint against Johnson with the D.C. Bar. After receiving the ALJ's compensation order, H.G. wrote to the ALJ in July 2015 requesting that Johnson be released from representing him and attached Johnson's memorandum memorializing the one-third fee that he received in July 2014. In October 2015, the ALJ issued an order to Johnson to show cause why he should not be referred to Disciplinary Counsel for taking a fee in excess and violation of D.C. Code. Johnson replied to this order and claimed that he believed the payment was approved and that it also represented other legal work he had done for H.G. The ALJ notified Disciplinary Counsel in March 2016, and reported that Johnson had taken a fee of $20,350.21 in excess and violation of D.C. Code. This reported

amount was based on a document provided to the ALJ from H.G. and included a $1,000 error in the total.

After H.G.'s workers' compensation appeal had been resolved on remand, his new counsel, Mr. Levi, was preparing his petition for attorney's fees and contacted Johnson in July 2016. Mr. Levi asked Johnson how much of a fee Johnson had received from H.G. and said that he understood it to be one-third. Johnson avoided answering directly Mr. Levi's questions and instead denied having taken $20,350.21 or a thirty-five percent fee (apparently a reference to the erroneous amount in the ALJ's referral to Disciplinary Counsel). He also gave details about the scope and nature of his representation of H.G. that were inaccurate.

Also in July 2016, Johnson filed a fee petition seeking $40,324.66 in attorney's fees. This petition failed to disclose the $19,350.21 that he had already received from the check in July 2014. Nor did the petition disclose that it was recreated from memory after the fact. In truth, Johnson had no time records from his representation of H.G. Many of the entries appeared exaggerated given the type of work performed or the amount of time it was documented to have actually taken. For example, Johnson claimed two hours (at $500 per hour) for his initial

meeting with H.G. in June 2012, which, in fact, took less than an hour.  Finally, some entries in his fee petition covered work for services performed after H.G. had discharged Johnson, such as three hours preparing his response to the ALJ's October 2015 order to show cause why he should not be referred to Disciplinary Counsel.  H.G. and the District objected to Johnson's fee petition.  The ALJ denied the fee petition in February 2017.

From May to October 2016, Disciplinary Counsel requested Johnson's cooperation to answer questions and provide documents, but his conduct was disobliging.  For example, he claimed the check for $58,050.63 was not an award of H.G.'s benefits, and he failed to produce certain requested documents, such as financial records.  Johnson's conduct was not any more helpful at the disciplinary hearing.  For example, he initially testified that he did not receive any money from H.G. at all.  He later testified that H.G. had given him money, but that it was for less than $19,000 and not for attorney's fees.

The Committee made the above factual findings and recommended disbarment on the ground of flagrant dishonesty.  The Board adopted the Committee's report and recommendation as supported by substantial evidence. The present review followed.

## II. Substantial Evidence of Charged Violations

"In disciplinary cases, the Board must accept the Hearing Committee's evidentiary findings, including credibility findings, if they are supported by substantial evidence in the record. This court, in turn, must accept the Board's findings of fact, and we also apply the 'substantial evidence' standard. We review the Board's conclusions of law *de novo*." *In re Cleaver-Bascombe I*, 892 A.2d 396, 401-02 (D.C. 2006) (citations omitted); *see also* D.C. Bar R. XI, § 9(h)(1) ("In determining the appropriate order, the Court shall accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record.").

Because the reports and recommendations below are voluminous and meticulously detailed, we will not cite to every factual example, exhibit, excerpt of the transcript, and so forth. Rather, we conclude that substantial evidence of each charged violation is supported by a handful of notable examples upon which we will focus our review.

### A. The Board's Report and Recommendation

### 1.    Duty to Communicate – Rule 1.4(b)

Rule 1.4(b) of the D.C. Rules of Professional Conduct provides that "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Comment three to that Rule states that "[t]he guiding principle is that the lawyer should fulfill reasonable client expectations for information consistent with (1) the duty to act in the client's best interests, and (2) the client's overall requirements and objectives as to the character of representation." Therefore, "[t]o meet that expectation, a lawyer not only must respond to client inquiries but also must initiate communications to provide information when needed. A lawyer may not withhold information to serve the lawyer's own interest or convenience." *In re Ekekwe-Kauffman*, 210 A.3d 775, 789 (D.C. 2019) (citations, quotation marks, and brackets omitted).

The Board's findings of fact concerning Rule 1.4(b) were that Johnson failed to inform his client of rules governing attorney's fees in a workers' compensation claim, notably that the fee cannot exceed twenty percent of the actual award secured, that it is paid directly from the D.C. government, and that it must be approved by an ALJ. These factual findings are supported by substantial evidence.

Johnson knew of D.C. Code § 1-623.27. H.G. testified that Johnson did not tell him about this code provision and its limitations on attorney's fees, which Johnson acknowledged in his hearing before the Committee. After receiving the check for H.G.'s workers' compensation award, he met with his client at a bank and had H.G. sign the check and split the money; two-thirds went to the client and one-third went to Johnson. This fee arrangement was memorialized in a memorandum to H.G. from Johnson's office. Two months later, H.G. learned from a "friend of a friend" that Johnson was required to seek his fee from the District instead of the client, something that he had not told his client.

Reviewing *de novo* the Board's legal conclusion that the above factual findings rise to the level of a Rule 1.4(b) violation, we hold that they do. First, the facts indicate that Johnson knew of the statute and failed to inform his client. Second, the fact that he arranged for and actually accepted a fee in excess and in violation of that statute indicates that this failure to communicate was motivated by his own interest (obtaining a higher-than-permitted fee) and convenience (receiving that fee immediately instead of waiting for the ALJ to approve it and the D.C. government to pay it). Therefore, we adopt the Board's findings and conclusions because they are supported by substantial evidence.

## 2.    Unreasonable Fee – Rule 1.5(a)

Rule 1.5(a) of the D.C. Rules of Professional Conduct provides that "[a] lawyer's fee shall be reasonable." Furthermore, "[a]ny fee that is prohibited . . . by law is *per se* unreasonable." D.C. R. Prof. Conduct 1.5(f). We set out two additional ways in which an attorney may violate Rule 1.5(a) in *Cleaver-Bascombe I,*

> The prototypical circumstance of charging an unreasonable fee is undoubtedly one in which an attorney did the work that he or she claimed to have done, but charged the client too much for doing it. This case is different, for the allegation is that Respondent sought compensation for work that she did not do at all. Nevertheless, the Hearing Committee and the Board both concluded that charging *any* fee for work that has not been performed is *per se* unreasonable. We agree. It cannot be reasonable to demand payment for work that an attorney has not in fact done.

892 A.2d at 403.

The Board's factual findings regarding Rule 1.4(b) were that Johnson accepted a fee above the statutory cap of twenty percent of the total award his client received, and for a small amount of work actually performed and at rates not normally permitted in workers' compensation cases. There is substantial evidence in the report to support the Board's factual findings. We reference the factual

findings regarding Rule 1.4(b) mentioned above and reiterate that they are substantial evidence that Johnson charged and accepted a fee prohibited by D.C. Code.

Furthermore, Johnson's documented work on his client's case ranged from short letters lacking substance and a form to which he added little if anything to seemingly boilerplate discovery requests and a short (three-page) opposition brief. In addition to work product, Johnson attended a pre-hearing conference and argued his client's case in a hearing before an ALJ that took forty-five minutes to an hour; the latter without meeting with his client ahead of time or preparing him to testify in that hearing.

Lastly, Johnson petitioned the D.C. government for attorney's fees for work that he did not do. For example, his fee petition asserted hours worked in responding to a motion pending as of June 2012, when – as Johnson acknowledged at hearing – no such motion was pending in June 2012. Other assertions in the fee petition concerned work performed, allegedly on his client's behalf, after the date that his client terminated his representation.

Reviewing the Board's legal conclusions *de novo*, we hold that the findings above demonstrate a violation of Rule 1.5(a). First, the fee in excess of twenty percent was prohibited by statute and is *per se* a violation of the rule. Second, the apparently perfunctory nature of the work actually performed did not warrant such a hefty fee. Third, his fee petition asserted compensation for work not actually performed.

### 3. Making Knowing False Statements to a Tribunal – Rule 3.3(a)(1)

Rule 3.3(a)(1) of the D.C. Rules of Professional Conduct provides that "[a] lawyer shall not knowingly . . . [m]ake a false statement of fact or law to a tribunal." This "is an extremely serious ethical violation." *In re Ukwu*, 926 A.2d 1106, 1140-41 (D.C. 2007) (accepting Hearing Committee's finding that respondent had violated Rule 3.3(a)(1) where respondent misrepresented that his client "had mistakenly mailed" a necessary document to the wrong venue "when in fact she credibly testified that she had delivered the [document] to his office and he had assured her that it would be timely filed") (citation omitted). For example, in *Cleaver-Bascombe I*, we held that submitting a voucher for compensation for work the Respondent knew she had not performed was a Rule 3.3(a)(1) violation. *See* 892 A.2d at 403-04.

The Board's findings of fact regarding Rule 3.3(a)(1) were that Johnson submitted a fee petition based on false assertions.  There is substantial evidence of these factual findings.  We reference the factual findings above regarding Rule 1.5(a).  Reviewing the Board's legal conclusion *de novo*, we hold that those factual findings rise to the level of violating Rule 3.3(a)(1) because Johnson submitted an inflated fee petition for work that he knew that he had not performed.

4.      **Dishonesty, Fraud, Deceit, and Misrepresentation – Rule 8.4(c)**

Rule 8.4(c) of the D.C. Rules of Professional Conduct provides that "[i]t is professional misconduct for a lawyer to . . . [e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

> This court has stated that dishonesty, fraud, deceit, and misrepresentation are four different violations, that may require different quantums of proof.  Hence, while an intent to defraud or deceive may be required for a finding of fraud, dishonesty may result from conduct evincing a lack of honesty, probity or integrity in principle; a lack of fairness and straightforwardness.  Thus, what may not legally be characterized as an act of fraud, deceit or misrepresentation may still evince dishonesty.

*In re Romansky*, 825 A.2d 311, 315 (D.C. 2003) (citations, quotation marks, ellipses, and brackets omitted).

The Board's findings of fact regarding Rule 8.4(c) were that Johnson petitioned the D.C. government for fees in excess of the work he actually performed on his client's behalf, as well as for work that he had not actually performed. Furthermore, it found that he relayed knowingly false information to his client's new counsel. Both of these examples, according to the Board, were independent violations of Rule 8.4(c).

There is substantial evidence to support the Board's factual findings above. We reference our discussion above concerning Rule 1.5(a). Johnson did indeed petition the D.C. government for fees in excess of work he actually performed. Furthermore, he told H.G.'s new counsel, Mr. Levi, that he represented his client from the beginning of his workers' compensation claim, participated in pre-hearing conferences with the ALJ, represented H.G. before the Compensation Review Board (CRB), and that no check was issued until after the CRB approved his client's claim. In truth, each of these assertions was false. Moreover, Johnson often failed to respond directly to Mr. Levi's questions and requests for documents that were necessary to continue the representation. For example, Mr. Levi asked

Johnson whether he had taken a fee of one-third of the check for $58,050.63 received in 2014, to which Johnson responded that he never took a thirty-five percent fee. His communications with new counsel are too long to recount in more detail than this brief example.

Reviewing the Board's legal conclusions *de novo*, we hold that they constitute a violation of Rule 8.4(c). First, submitting a patently false fee petition implies an intent to deceive the D.C. government. At the very least, it evinces a lack of honesty. Second, Johnson's characterization of his representation of H.G. to Mr. Levi was dishonest. Third, his responses to Mr. Levi's questions were the opposite of fair and straightforward. Any of these would violate Rule 8.4(c), and together they paint a picture of flagrant dishonesty.

### 5. Knowing Failure to Respond and to Disclose a Fact Necessary to Correct a Misapprehension – Rule 8.1(b)

Rule 8.1(b) of the D.C. Rules of Professional Conduct provides that "a lawyer . . . in connection with a disciplinary matter[] shall not . . . [f]ail to disclose a fact necessary to correct a misapprehension known by the lawyer . . . to have arisen in the matter, or knowingly fail to respond reasonably to a lawful demand for information from [a] . . . disciplinary authority."

The Board's factual findings regarding Rule 8.1(b) were that Johnson made evasive and dishonest statements during the disciplinary proceedings. We find that there is substantial evidence of a Rule 8.1(b) violation.

The ALJ's letter referring Johnson to the Disciplinary Counsel incorrectly stated that Johnson had taken a $20,350.21 (thirty-five percent) fee. When Disciplinary Counsel sought Johnson's answer to this claim by the ALJ, he denied taking a fee of $20,350.21, without disclosing that he had, however, taken a fee of $19,350.21, an amount in excess of the amount allowed under the D.C. Code. His failure to disclose that information, which was necessary to remedy a misapprehension by Disciplinary Counsel that he had not taken any fee at all, was dishonest and violated Rule 8.1(b) by knowingly failing to disclose a fact necessary to correct a misapprehension known by the lawyer to have arisen in the matter.

## 6. Conduct Seriously Interfering with the Administration of Justice – Rule 8.4(d)

Rule 8.4(d) of the D.C. rules of Professional Conduct provides that "[i]t is professional misconduct for a lawyer to . . . [e]ngage in conduct that seriously interferes with the administration of justice."

> To establish a violation of Rule 8.4(d), Bar Counsel must prove by clear and convincing evidence that (1) the attorney either took improper action or failed to take action when [he or] she should have acted; (2) the conduct involved bears directly on a case in the judicial process with respect to an identifiable case or tribunal; and (3) the conduct taints the judicial process in more than a *de minimis* way, meaning that it must at least potentially impact upon the process to a serious and adverse degree.

*In re Hallmark*, 831 A.2d 366, 374-75 (D.C. 2003) (citation omitted) (rejecting the Board's conclusion that the late filing of an obviously deficient voucher violated Rule 8.4(d) because it was the result of negligence instead of fraud). Conduct may be improper if it "violates a specific statute, court rule or procedure, or other disciplinary rule." *In re Hopkins*, 677 A.2d 55, 61 (D.C. 1996).

The Board's findings of fact regarding Rule 8.4(d) were that Johnson mishandled H.G.'s workers' compensation claim, which resulted in wasted time and added expense for the former client, as well as added administrative burden on the ALJ. It concluded that, taken together, this constituted a violation of Rule 8.4(d).

There is substantial evidence to support the Board's factual findings. We reference the discussions above regarding the failure to disclose the D.C. Code provision restricting attorney's fees in workers' compensation cases, *de minimis* efforts on his former client's behalf, and evasiveness towards new counsel, which all indicate a mishandling of H.G.'s case. As discussed, this conduct violated D.C. Code and D.C. Rules of Professional Conduct. Therefore, it was improper. It bore directly on an identifiable case (H.G.'s workers' compensation claim). It adversely impacted that proceeding in more than a *de minimis* way in that he took client funds, submitted a dishonest fee petition, and clogged the channels of justice by submitting a frivolous appeal of a non-final and non-appealable order – all of which necessitated extensive judicial efforts to sort out and decide, both before the ALJ and the judges on this court. Therefore, we adopt the Board's legal conclusion that Johnson's conduct violated Rule 8.4(d).

**B.    Respondent's Failure to Present Meaningful Exceptions to the Board's Report and Recommendation**

"The burden of proving disciplinary charges rests with Bar Counsel, and the Board's factual findings must be supported by clear and convincing evidence." *In re Szymkowicz*, 124 A.3d 1078, 1083-84 (D.C. 2015) (citation, ellipses, and

brackets omitted).  However, as noted above, we must accept the Board's findings of fact unless unsupported by substantial evidence.  *Cleaver-Bascombe I*, 892 A.2d at 401-02.

We conclude that Johnson's exceptions to the Board's Report and Recommendation do not overcome the presumption that we accept findings and conclusions supported by substantial evidence.  Johnson argues that, in essence, 1) the Board confused Johnson (Johnnie L.) with another attorney (Johnnie C.) when it initially and erroneously identified Johnson as Johnnie C. Johnson, 2) his fee petition submitted after taking payment from H.G. was meant to reimburse H.G. for the fees he had already taken, 3) the Committee violated his constitutional right by requiring him to testify at a hearing in which he represented himself, and 4) H.G. had the constitutional right to give him money, regardless of where the money came from.

## 1.  Misidentified person

Johnson argues that he was misidentified by the Office of Disciplinary Counsel on various occasions.  He states that his name, age, physical description,

and year of admission to practice in D.C. were all misidentified[1] and that this evidence shows that the Office of Disciplinary Counsel and the ALJ, Fred D. Carney Jr., combined and conspired to target him. Johnson contends that Carney targeted him because he had various workers' compensation hearings before him that were later reversed by the Office of Workers Compensation Appeals Board. Johnson also contends that Carney was the one who made the "erroneous allegation without any support" that he took money from his client.

Despite what Johnson states, there is no evidence that the wrong attorney was investigated.[2] By the time of the hearing on August 7, 2017, he was correctly identified. Furthermore, Johnson admitted that he acted as counsel on behalf of H.G. in his workers' compensation case and engaged in the activities and communications reflected in the record of the case. Therefore, his argument provides no basis to overturn the Committee's and the Board's findings or conclusions.

---

[1] Johnson claims that he was willfully misidentified as Johnnie C. Johnson III; as having been admitted to the practice of law in D.C. in 1996; and as being a Black male, age 59, weighing 195 pounds, with no glasses and red hair.

[2] At the pre-hearing conference on June 9, 2017, Disciplinary Counsel apologized for the typo in the petition and Specification of Charges and agreed to re-serve Johnson. Counsel did mention that despite the typo, Johnson was the attorney they investigated and was involved in the representation of H.G.

## 2. Fee petition

Johnson argues that his fee petition submitted after taking payment from his former client was meant to reimburse H.G. for the fees he had already taken. He asserts that the Office of Disciplinary Counsel colluded with Mr. Levi to order H.G. to not accept payment from this fee petition in order to charge Johnson with these rule violations, and that this was a "strategic decision that caused [H.G.] his financial loss."

However, Johnson points to no evidence in the record to support his argument. The Committee heard his argument at the hearing and they were able to make credibility determinations (including accepting or rejecting his argument) at that time based on the record and his testimony. While Johnson does not bear the initial burden to disprove rule violations that are charged, once Disciplinary Counsel has presented substantial evidence, we are bound to adopt those findings unless Johnson can demonstrate why that evidence is not in fact reliable or does not actually prove those violations. Johnson has failed to demonstrate why any of the evidence relied upon by the Committee was not reliable.

## 3. Constitutional arguments

Johnson argues that the Committee violated his constitutional right by requiring him to testify at a hearing in which he represented himself in order to prove their case, and his former client had the constitutional right to give him money, regardless of where the money came from. However, Johnson's arguments are vague one-line conclusory assertions. He has failed to cite authority in this jurisdiction or any other to support his arguments. Therefore, we consider his arguments waived since undeveloped legal arguments will not be entertained on appeal. *See* D.C. App. R. 28(a)(10) (the brief must contain an argument "containing the appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"); *see also Comford v. United States*, 947 A.2d 1181, 1188 (D.C. 2008) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

## III. Necessity and Consistency of Disbarment

"In determining the appropriate order, the Court . . . shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be

unwarranted." D.C. Bar R. XI, § 9(h)(1). "The Board's recommended sanction comes to us with a strong presumption in favor of its imposition. If the Board's recommended sanction falls within a wide range of acceptable outcomes, it will be adopted and imposed." *In re McClure*, 144 A.3d 570, 572 (D.C. 2016) (citation, quotation marks, and brackets omitted). Despite this strong presumption, we also consider the seriousness of respondent's conduct, prejudice to his client, whether the conduct involved dishonesty, other rules violations, previous disciplinary history, respondent's remorsefulness, and other mitigating circumstances. *See In re Pelkey*, 962 A.2d 268, 281 (D.C. 2008). The Board recommended two sanctions: disbarment and, as a condition of possible reinstitution, restitution of the full amount taken paid to the Clients' Security Fund.

"We reserve the sanction of disbarment for the most extreme attorney misconduct, and have done so in two types of dishonesty cases – (1) intentional or reckless misappropriation where the presumptive sanction is disbarment, and (2) dishonesty of the flagrant kind." *In re Howes*, 39 A.3d 1, 15 (D.C. 2012) (citation and quotation marks omitted). "Further, disbarment has been imposed as a sanction in cases where misconduct was subsequently concealed by deceit or fraud." *Id*. Indeed, "[t]he attempted cover-up often exceeds the initial misconduct." *In re Cleaver-Bascombe II*, 986 A.2d 1191, 1200 (D.C. 2010). We

hold that Johnson's conduct involved flagrant dishonesty, and, therefore, it falls within the range of cases where we have imposed disbarment in the past. Moreover, we conclude that Johnson's behavior before Disciplinary Counsel, the committee, the Board, and this court, demonstrate an effort to conceal his wrongdoing. Therefore, there is ample justification for disbarment in this case.

We consider the aggravating and mitigating factors mentioned above to determine whether disbarment is warranted. First, Johnson's behavior involved dishonesty, which is "antithetical to the practice of law" and "cannot be condoned by those charged with protecting the public from unscrupulous conduct by lawyers." *In re Daniel*, 11 A.3d 291, 300 (D.C. 2011) (citation omitted). Second, not only did Johnson take money belonging to his client to which he was not legally entitled, his handling of the case also prejudiced H.G.'s workers' compensation claim by requiring him to start over with new counsel to successfully litigate the matter. *See, e.g.*, *In re Baber*, 106 A.3d 1072, 1075 (D.C. 2015) (holding that respondent had prejudiced his client by withdrawing and causing her "to restart the probate process with a new attorney and post a . . . probate bond"). Third, numerous violations, "albeit arising essentially in a single matter, require a substantial sanction." *In re Silva*, 29 A.3d 924, 943 (D.C. 2011) (holding thus in light of respondent's eight violations in connection with the same

matter). In this case, Johnson has not only violated the rule against dishonesty, but a host of other ones as explained above. Fourth, respondent shows no remorse, which weighs "significantly in favor of disbarment." *In re Baber*, 106 A.3d at 1077 (observing that "the record support[ed] the Board's determination that [respondent] showed no remorse during the disciplinary process, but instead repeated his false accusations against [his client] and continued to falsely blame [his client]"). Finally, and to Johnson's credit, we are unaware of any history of rules violations; however, in light of all the other factors, the absence of any evidence before us indicating a history of violations does not sufficiently mitigate against our decision to impose disbarment.

"When imposing discipline, the Court . . . may require an attorney to make restitution either to persons financially injured by the attorney's conduct or to the Clients' Security Trust Fund (see Rule XII), or both, as a condition . . . of reinstatement." D.C. Bar R. XI, § 3(b). Restitution as a condition of reinstatement is consistent with prior disbarment cases involving dishonesty and attorneys taking money to which they are not entitled. *E.g.*, *In re Omwenga*, 49 A.3d 1235, 1244-45 (D.C. 2012) (imposing restitution as condition of reinstatement where "Respondent was repeatedly dishonest with his clients, courts, Bar Counsel and the Hearing Committee," neglected client matters, and misappropriate $550); *In re*

*Stewart*, 953 A.2d 1034, 1035-36 (D.C. 2008) (imposing restitution as a condition of reinstatement where respondent used retainer fees for personal use before performing any work on clients' behalf); *In re Viehe*, 762 A.2d 542, 543-44 (D.C. 2000) (imposing restitution as a condition of reinstatement where respondent used blank checks provided by his client for use in a real-estate transaction to give himself loans without his client's knowledge). Therefore, we concur with the Board's recommendation that Johnson be required to pay full restitution of $19,350.21 to the Clients' Security Fund as a condition of reinstatement. Though Johnson performed some work on H.G.'s behalf, the entirety of the fee that he received was based on dishonesty and was illegally obtained; thus, Johnson should not be permitted to profit from his misconduct.

## IV. Conclusion

Because the Board's factual findings are supported by substantial evidence, we are required to adopt them. Reviewing the Board's legal conclusions *de novo,* we conclude that they are consistent with our precedent. Because disbarment for flagrant dishonesty is consistent with our prior decisions, and because it is warranted in Johnson's case, we adopt the Board's recommendation. Therefore, it is

ORDERED that Johnnie L. Johnson, III is disbarred from the practice of law in the District of Columbia, and that a condition of reinstatement is full restitution of $19,350.21 to the Clients' Security Fund.